INTERNATIONAL INSURANCE AGENCY, INC.; Bert Whisenant, Jr. d/b/a Bert Whisenant Insurance; Gregg L. Carter d/b/a R.B. Carter Agency; Insurance Express, Inc.; Hector Villarreal; and Maude Lette, Elmer Lette, and James Lette, Individually, Jointly, and d/b/a Lette Insurance Agency, Appellants,

v.

RAILROAD COMMISSION OF TEXAS, Appellee.

No. 3–94–060–CV.

Court of Appeals of Texas, Austin.

Feb. 1, 1995.

Rehearing Overruled Feb. 22, 1995.

---

Rex H. White, Jr., Hutcheson & Grundy, L.L.P., Austin, for appellant.

Dan Morales, Atty. Gen., Douglas Fraser, Norma K. Scogin, Asst. Attys. Gen., Austin, for appellee.

Before JONES, KIDD and B.A. SMITH, JJ.

## ON MOTION FOR REHEARING

JONES, Justice.

The opinion issued herein on December 7, 1994, is withdrawn, and the following opinion is filed in lieu thereof.

International Insurance Agency, Inc. and other insurance agents and brokers [1] (collectively "Plaintiffs") filed suit in district court pursuant to the Administrative Procedure Act, Tex. Gov't Code Ann. § 2001.038 (West 1994), challenging the validity of a Railroad Commission rule providing an alternative

method for registering intermittent international commercial carriers. *See* 16 Tex.Admin. Code ("TAC") § 5.507(c) (1994). Plaintiffs appeal from a declaratory judgment upholding the rule. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Texas law requires all commercial motor vehicles to register annually with the Railroad Commission ("the Commission"). *See* Tex.Rev.Stat.Ann. art. 911b, § 4(a)(13) (West Supp.1994). All commercial motor carriers are also required to maintain liability insurance, at limits set by the Commission, and file proof of such insurance with the Commission. Tex.Rev.Civ.Stat.Ann. art. 6701d, § 139(c) (West Supp.1994). Typically, commercial motor vehicles meet these requirements through annual registration, documenting compliance with a "cab card." These cab cards, issued by the Commission, evidence both registration with the Commission and compliance with the liability insurance requirements. *See* 16 TAC §§ 5.501–5.506.

In 1988, in response to insurance industry concerns, the Commission determined that the cab-card procedure posed unacceptable burdens on intermittent international commercial carriers that enter the United States under temporary insurance policies frequently referred to as "trip insurance." *See* 13 Tex.Reg. 1501 (1988). To respond to this problem, the Commission developed a special alternative registration system for international carriers entering the country on a temporary and irregular basis. In lieu of maintaining commercial motor vehicle registration through use of annual registration and the cab-card procedure, these carriers were permitted to register through an international registration stamp program. *See* 16 TAC § 5.507.

This alternative compliance program works in the following manner. Participating insurance agents file evidence of a master insurance policy with the Commission. Only

1. These are: Gregg L. Carter d/b/a R.B. Carter Agency; Bert Whisenant d/b/a Bert Whisenant Insurance; Insurance Express, Inc.; Hector Villarreal; and Maude Lette, Elmer Lette, and James Lette, individually, jointly, and d/b/a Lette Insurance Agency.

agents who file this documentation may obtain and sell international registration stamps. The Commission assigns each master policy an identification number. The international registration stamps bear the number of the corresponding master policy. 16 TAC §§ 5.507(c)(2)–(3). When an international motor carrier uses this alternative procedure, the insurance agent selling the policy is required to record certain basic information about the insured and, within thirty days, file this information with the Commission on a form provided.[2] 16 TAC §§ 5.507(c)(4)–(5). To document the registration and temporary trip insurance, the international commercial carrier must purchase a ten-dollar international registration stamp from the insurance agent.[3] 16 TAC § 5.507(c)(1). This stamp must be affixed to the temporary insurance policy and be carried in the vehicle at all times. 16 TAC § 5.507(c)(6).

The Commission also established procedures for insurance agents to procure the stamps. An agent who has filed evidence of a master policy with the Commission may purchase the stamps in advance in lots of five, or may obtain them on consignment by posting a bond in the amount of twice the total value of stamps held on consignment. 16 TAC §§ 5.507(c)(2), (7). Agents must remit fees collected from the sale of international stamps on consignment within thirty days of sale. 16 TAC § 5.507(c)(8). For stamps not held on consignment, agents must submit evidence of sale of the stamp within ninety days. 16 TAC § 5.507(c)(9).

Plaintiffs brought a declaratory judgment action against the Commission seeking to declare invalid these provisions embodied in section 5.507(c). They challenged the rule on two grounds: exceeding statutory authority and federal preemption. The district court concluded that the Commission did not ex-

ceed its statutory authority in promulgating section 5.507(c) and, further, that the registration fee required by the rule was not preempted by federal law. Plaintiffs appeal the trial-court judgment in seven points of error.

## DISCUSSION

### A. STATUTORY AUTHORITY

In their first point of error, Plaintiffs contend the trial court erred in declaring that section 5.507(c) did not exceed the Commission's statutory authority. The essence of this challenge is that section 5.507(c) extends the Commission's regulatory power over insurance agents without legislative authorization to do so. We disagree.

The test for whether an agency rule exceeds statutory authority is whether the rule is in harmony with the general objectives of the statute. *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex.1992); *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex.1968). To make this determination, we must look not only to a particular provision of the act, but to all applicable provisions. *Gerst*, 432 S.W.2d at 706; *Chrysler Motors Corp. v. Texas Motor Vehicle Comm'n*, 846 S.W.2d 139, 141 (Tex.App.—Austin 1993, no writ). As in all questions of statutory interpretation, we are guided by the intent of the legislature. *See* Tex. Gov't Code Ann. § 312.005 (West 1988); *Monsanto Co. v. Cornerstones Mun. Util.Dist.*, 865 S.W.2d 937, 939 (Tex.1993).

The legislature has vested the Commission with power and authority to "supervise and regulate the transportation of property for compensation or hire by motor vehicle on any public highway in this State...."

---

2. The record includes a copy of the current form used by the Commission. This single page form, preprinted with the name of the insurer and master policy number, accommodates five different carriers. The agent records only five lines of information. This basic information includes: name of carrier, year and make of vehicle, vehicle identification number, port of entry, license plate number, trip policy number, and date of sale.

3. When originally established in 1988, the international stamp cost two dollars. 13 Tex.Reg. 1501 (1988). The stamp cost was later raised to twenty dollars. 17 Tex.Reg. 5285 (1992). In 1993, the Commission reduced the cost of the stamp to the current ten dollars. 18 Tex.Reg. 8196 (1993).

Tex.Rev.Civ.Stat.Ann. art. 911b, § 4(a)(1) (West Supp.1994). This broad grant of authority is intended to enhance public safety and to physically protect the highways. Tex.Rev.Civ.Stat.Ann. art. 911b, § 22b (West 1964) (declaration of policy); *Great Nat'l Life Ins. Co. v. Chapa*, 377 S.W.2d 632, 634–35 (Tex.1964).

■ To accomplish these general objectives, the Commission has specific legislative authorization over commercial vehicles. All commercial motor vehicles are required to register with the Commission. Tex.Rev.Civ.Stat.Ann. art. 911b, § 4(a)(13) (West Supp. 1994). Additionally, all motor carriers must maintain proof of liability insurance at levels established by the Commission. Tex.Rev.Civ.Stat.Ann. art. 6701d, § 139(c) (West Supp.1994). The Commission is also authorized to "adopt regulations necessary to ensure that motor carriers maintain proof of liability and property damage insurance." *Id.* While these legislative authorizations do not specifically mention insurance agents, the Commission determined that they provide sufficient authority for its rule in the context of a voluntary, alternative compliance program for intermittent international commercial carriers. We agree.

The alternative program simply requires insurance agents who choose to sell trip insurance to infrequent international carriers to record basic information about the carrier and to affix a stamp that identifies the temporary trip insurance policy with a master policy on file with the Commission. These requirements are "in harmony" with the statutory authorization that the Commission register and require proof of insurance of commercial carriers. The program is certainly consistent with the general objective of enhanced public safety. Moreover, if the Commission cannot require insurance agents who voluntarily agree to participate in this alternative registration program to comply with section 5.507(c) requirements, there may be no effective alternative to ensure that these temporary visitors are properly registered and insured as required by statute. Section 5.507(c) does impose some burdens on insurance agents; however, those agents who find this voluntary alternative program too burdensome have an easy solution: They can simply decline to participate in the program.

Plaintiffs rely on language in a 1939 opinion from this Court that the Commission is powerless to impose additional burdens on insurance companies. *See Railroad Comm'n v. Highway Ins. Underwriters*, 124 S.W.2d 413, 414 (Tex.Civ.App.—Austin 1939, no writ). In *Highway Insurance*, the Commission required insurance companies writing liability policies for motor carriers to deposit $50,000 in cash or securities with the Commission before it would approve the insurance carrier. We held that, because former section 13 of the Motor Carrier Act required only that the insurance be issued by a company "authorized by law to transact business in Texas," forcing a company to meet an additional $50,000 deposit requirement after it had already been authorized to do business by the Board of Insurance exceeded the Commission's statutory authority. *Id.* at 413–14.

The present case, however, is distinguishable. First, when *Highway Insurance* was decided, the Commission was operating without the statutory authorization to register and require proof of insurance present today. These specific grants of authority now provide the Commission with authority it did not possess in 1939. Further, unlike *Highway Insurance*, the Commission here is not imposing an additional burden on insurance agents under circumstances where the legislature has previously limited Commission authority to a single requirement. Given the differences in these two situations, *Highway Insurance* is not controlling.

Recent appropriations acts confirm our interpretation of the legislature's intent regarding the Commission's statutory authority. The 1991 legislative appropriation for the Railroad Commission provides that "[t]he Railroad Commission *shall adopt rules* providing for the following transportation fees" and lists the then twenty-dollar international stamp. General Appropriations Act, 72d Leg., 1st C.S., ch. 19, 1991 Tex.Gen.Laws 365, 603 (emphasis added). The most recent appropriation act goes even further. It includes the general authorization above, as well as a specific authorization concerning

the international stamps: "Only if an insurance agent elects to file evidence of a master liability policy under which temporary insurance policies are issued, or to issue temporary insurance, may the Commission require an insurance agent to obtain international registration stamps as provided by Commission rules." General Appropriations Act, 73d Leg., R.S., ch. 1051, 1993 Tex.Gen.Laws 4531, 4805–06.

Our objective is to ascertain the consistent purpose of all legislative enactments and to carry out the legislative intent by giving effect to all laws bearing on the same subject. *Reed v. Department of Licensing & Regulation*, 820 S.W.2d 1, 2 (Tex.App.—Austin 1991, no writ). This is true even if the laws were enacted by different sessions of the legislature. *Id.* Standing alone, these enactments provide insight into the intent of the legislature to authorize Commission authority over insurance agents in this limited context. Coupled with the statutory authorization to register and require proof of insurance, we conclude that section 5.507(c) is within the Commission's statutory authority. Point of error one is overruled.

## B. FEDERAL PREEMPTION

■ In their second point of error, Plaintiffs contend that federal law preempts section 5.507(c). Preemption exists when: (1) Congress explicitly preempts state law; (2) Congress implicitly preempts state law by intending to completely occupy a given field; or (3) state law conflicts with federal law. *Lone Star Gas*, 844 S.W.2d at 691. Plaintiffs contend that the ten-dollar *per trip* cost of the registration stamps under section 5.507(c) directly conflicts with a ten-dollar *annual* registration fee limitation imposed by

Interstate Commerce Commission ("ICC") regulations.[4] *See* 49 C.F.R. §§ 1023.4–.5 (1993). Examination of the motor carriers covered by these different state and federal regulations demonstrates that no such conflict exists.

■ The ICC regulations contained in 49 C.F.R. § 1023 are designed to replace the *multi-state* vehicle registration system with a simplified, single-state insurance-based registration system. 58 Fed.Reg. 28932 (1993). However, the regulations in this new system do not apply to all motor carriers. They only affect a "motor carrier holding a certificate or permit issued by the [Interstate Commerce] Commission under 49 U.S.C. 10922 or 10923." 49 C.F.R. § 1023.4(a) (1993). Likewise, section 5.507 does not apply to all carriers. Specifically excluded from coverage is "a motor carrier as defined in § 5.331 of this title." 16 TAC § 5.501(c)(3). Section 5.331 defines "motor carrier" as one "holding operating authority issued by the Interstate Commerce Commission, or a motor carrier of passengers or property for compensation engaged in interstate or foreign commerce when those operations are exempt from economic regulation by the Interstate Commerce Commission under the IC Act." 16 TAC § 5.331 (1994). Consequently, if a motor carrier operates under an ICC certificate and is subject to the single-state registration system, section 5.507(c) requirements do not apply.[5] Since there is no overlap between the carriers to which the ICC requirements and those of section 5.507(c) apply, no conflict exists and the Commission's rule is not preempted. Point of error two is overruled.

## C. AIDING AND ABETTING

■ Point of error three focuses on an "aiding and abetting" allegation. Plaintiffs

4. It is questionable whether Plaintiffs even have standing to raise this point of error. Essentially, they argue that the amount of the fee is preempted because it exceeds the ten-dollar per year limit. However, it is undisputed that the motor carrier, not the insurance agent, ultimately bears this cost. *See* 16 TAC § 5.507(c)(1) ("[A]n international commercial carrier shall purchase ... an international registration stamp."). While a motor carrier who has actually paid this allegedly preempted fee might have standing, insurance agents who do not bear this expense and suffer no injury from the amount of the fee arguably do

not. We will assume standing, however, and address the merits of this preemption claim.

5. The ICC regulations also apply to carriers granted emergency temporary authority or temporary authority having a duration of 120 days or less. 49 C.F.R. §§ 1023.4(a), (c)(1) (1993). If a carrier operates under this type of temporary authority, it would not fall under the requirements of § 5.507(c) since it would still be "holding operating authority issued by the Interstate Commerce Commission."

contend that in a pending administrative enforcement action, the Commission alleges that one of the appellants, Gregg L. Carter, aided and abetted a violation of the Motor Carrier Act by selling trip insurance without the required stamp. Plaintiffs sought a declaration that the sale of trip insurance without the required stamp was not aiding and abetting a violation of section 5.507. The trial court refused to grant this declaration, concluding that it would be an impermissible advisory opinion to determine this issue while it was still pending before the Commission. We agree.

The complaint against Carter includes the allegation that he "procure[d] transportation of foreign shipments . . . and violate[d] [section 5.507] by hiring a motor carrier that was not registered as an International Commercial Carrier with the Railroad Commission of Texas." While the trial court found this to be an "aiding and abetting" allegation, the record does not reflect a final determination by the Commission on this issue. Additionally, the testimony of Joe Barnard, the Commission's employee who issued the complaint, indicates uncertainty as to the validity of the aiding and abetting charge. When asked if selling trip insurance without the stamp was aiding and abetting, he responded: "I'm not sure that it's aiding and abetting of the violation of the rule." While confident that the sale of insurance without the stamp was a direct violation of section 5.507, he maintained throughout his testimony that he was simply unsure about the validity of an aiding and abetting charge.

Faced with the uncertainty of whether the Commission would pursue an aiding and abetting charge and how it would be ultimately resolved, the trial court appropriately refused to make a declaration concerning this allegation. Before declaring whether Carter's conduct constitutes an aiding and abetting violation, the Commission should be given the opportunity to pass on this issue. Given the pending nature of this complaint, coupled with the uncertainty expressed by the Commission's own enforcement officer, the trial court's refusal was not error. To do otherwise would amount to an improper advisory opinion.[6] *See Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993); *Texstar N. Am., Inc. v. Ladd Petroleum Corp.,* 809 S.W.2d 672, 679 (Tex. App.—Corpus Christi 1991, writ denied); *Stop 'N Go Markets v. Executive Sec. Sys., Inc.,* 556 S.W.2d 836, 837 (Tex.Civ.App.— Houston [14th Dist.] 1977, no writ). Point of error three is overruled.

## D. FINDINGS OF FACT AND CONCLUSIONS OF LAW

At Plaintiffs' request, the trial court made findings of fact and conclusions of law to support its judgment. In their four remaining points of error, Plaintiffs challenge these findings and conclusions. The basis of all these challenges is essentially that the trial court's findings and conclusions were not in Plaintiffs' favor. These points are meritless.

■■ Point of error four contends that the trial court erred in failing to enter additional findings of fact and conclusions of law. The trial court is only required to make additional findings of fact and conclusions of law that are appropriate. Tex.R.Civ.P. 298; *Tamez v. Tamez,* 822 S.W.2d 688, 692 (Tex. App.—Corpus Christi 1991, writ denied). If the refusal does not prevent the adequate presentation on appeal, there is no reversible error. *Tamez,* 822 S.W.2d at 693; *Baucom v. Crews,* 819 S.W.2d 628, 632 (Tex.App.— Waco 1991, no writ). If a party requests additional findings that are directly contrary to, or inconsistent with, the original findings, the court need not make such additional findings. *Tamez,* 822 S.W.2d at 693; *see Strickland v. Coleman,* 824 S.W.2d 188, 193 (Tex.

---

**6.** Partly because this point of error involves a request that the trial court determine the *applicability*—rather than the *validity*—of a Commission rule while the question is still pending before the Commission, the issue appears to be one of "ripeness." *See* Pete Schenkkan, *Judicial Review of Agency Rules and Actions Under APTRA Section 12, in* State Bar of Texas Prof.Dev. Program Advanced Administrative Law Course U, U–14 to U–19 (1993). If the Commission ultimately decides to pursue an aiding and abetting violation and finds against Carter, he will then have the opportunity to bring a suit for judicial review to challenge the Commission's action under the Administrative Procedure Act, Tex.Gov't Code Ann. §§ 2001.171–.178 (West 1994). Until then, however, the issue is not ripe for adjudication in the courts.

App.—Houston [1st Dist.] 1991, no writ). These principles completely resolve this point of error. The trial court's denial of Plaintiffs' additional findings, including several which are directly contrary to the court's original findings, has in no way affected Plaintiffs' ability to pursue this appeal. Point of error four is overruled.

In point of error five, Plaintiffs complain of the trial court's finding of fact number two, which reads: "Plaintiff and Intervenors are insurance agents or brokers that sell temporary liability insurance to international commercial motor carriers operating across the border with Mexico." Plaintiffs argue that this finding illustrates a "fundamental misunderstanding" because the agents sell insurance to commercial carriers coming *into* the United States *from* Mexico. While the wording of this finding may not be as precise as possible, given the accompanying findings and conclusions it is clear that the trial court understood that the insurance agents were those subject to section 5.507.[7] Point of error five is overruled.

■ Point of error six assigns error to the trial court's conclusion that Plaintiffs were not entitled to attorney's fees under former article 6252-30. *See* Act of June 11, 1987, 70th Leg., R.S., ch. 290, 1987 Tex.Gen. Laws 1650, 1650 (Tex.Rev.Civ.Stat.Ann. art. 6252-30, since repealed and codified at Tex. Gov't Code Ann. §§ 2006.001–.016 (West 1994)). These provisions allow a small business to recover attorney's fees in an administrative adjudicatory proceeding or a civil action resulting from a complaint issued by a state agency *if the business prevails* and the action was groundless and brought in bad faith or for harassment. Tex.Gov't Code Ann. § 2006.013 (West 1994). Since Plaintiffs did not prevail in the trial court or here, this section does not apply. Point of error six is overruled.

In a final point of error, Plaintiffs offer a generic assertion that the trial court's "findings of fact do not support the judgment." Plaintiffs complain that the trial court's findings do not reveal the factual bases of the court's determinations that the Commission did not exceed its statutory authority in promulgating section 5.507(c) and that federal law does not preempt the rule embodied in that section. Plaintiffs admit in their brief that the trial court's findings may be "fully supported by the evidence." Nor is there any suggestion that these findings somehow conflict with the conclusions of law. Rather, the essence of this point is that the trial court did not enter *enough* findings of fact to support the judgment. We disagree.

■ The trial court's conclusions on the issues of statutory authority and federal preemption are determinations of pure questions of law and appear to have been based entirely on undisputed facts. A trial court is not required to make findings of fact as to undisputed facts. *Howard P. Foley Co. v. Cox*, 679 S.W.2d 58, 64 (Tex.App.—Houston [14th Dist.] 1984, no writ). The additional findings that Plaintiffs requested the court below to make were either (1) undisputed facts, (2) immaterial facts, or (3) actually conclusions of law. Point of error seven is overruled.

### CONCLUSION

The trial court did not err in declaring the Commission has statutory authority for the alternative registration program embodied in section 5.507(c). Likewise, section 5.507(c) is not preempted by federal regulations, because the two programs apply to different motor carriers. Having overruled all of Plaintiffs' points of error, we affirm the trial-court judgment.

---

7. For example, conclusion of law number one states: "Plaintiff and Intervenors are insurance agents under [section 5.507] and *are subject to the provisions of that rule.*"