TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00449-CV






Donald Fulton, Appellant



v.



Associated Indemnity Corporation, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 97-11238, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 







 Donald Fulton suffered a back injury while on the job and after several months of
treatment was assessed at maximum medical improvement (MMI) with an impairment rating of
seven percent. Six months later his symptoms resurfaced, and Fulton and his doctors asked the
Workers' Compensation Commission to amend his MMI certification date and impairment rating. 
The Commission determined that Fulton's first MMI assessment and impairment rating had
become final because he failed to dispute that rating within ninety days of its assignment, as
required by Commission Rule 130.5(e) (the 90-day Rule). That rule states: "The first impairment
rating assigned to an employee is considered final if the rating is not disputed within 90 days after
the rating is assigned." 28 Tex. Admin. Code § 130.5(e) (2000). Fulton sought judicial review
of the Commission's decision and order, challenging the validity of the 90-day Rule. The district
court affirmed the Commission's decision. On appeal, Fulton complains that the 90-day Rule
contravenes the Workers' Compensation Act (the Act) by implicitly finalizing an MMI
certification within ninety days if it is not disputed. We hold that the 90-day Rule is invalid;
therefore, we reverse the order of the district court and render judgment granting Fulton's motion
for summary judgment.


FACTS AND PROCEDURAL BACKGROUND

 After Fulton was injured on the job in June 1995, he was initially treated by Dr.
Fred Arnold, a chiropractor. In September 1995, Dr. Arnold referred Fulton to Dr. Jacob
Rosenstein, a neurosurgeon, who diagnosed Fulton with a cervical spine injury, which involved
a disc bulge and protrusion. In October 1995, Dr. Rosenstein noted that surgery might be
required if Fulton's condition did not improve, but no surgery was performed at that time. 
Although a small central disc bulge was confirmed by a CT scan on November 21, Dr. Arnold
released Fulton to work without restrictions on November 27, 1995.

 In January 1996, Dr. Arnold referred Fulton to another doctor to determine
whether Fulton had reached MMI, the point when a certifying doctor determines that no further
recovery can be reasonably anticipated and assigns an impairment rating. See Tex. Lab. Code
Ann. § 401.011(30) (West Supp. 2001) & § 408.123 (West 1996). On January 11, 1996, a
certifying doctor ascertained that Fulton had reached MMI with an impairment rating of seven
percent.

 To determine the impairment rating, the certifying doctor evaluated the permanent
effect of Fulton's injury according to statutory guidelines. (1) See id. § 408.124 (West Supp. 2001);
Rodriguez v. Serv. Lloyds Ins. Co., 997 S.W.2d 248, 253 (Tex. 1999). The impairment rating
represents the percentage of permanent impairment to the whole body. Tex. Lab. Code Ann.
§ 401.011(24) (West Supp. 2001); Rodriguez, 997 S.W.2d at 253. The greater the percentage,
the longer the employee receives impairment income benefits. Rodriguez, 997 S.W.2d at 253. 

 An injured worker qualifying for impairment income benefits receives seventy
percent of his average weekly wage. Tex. Lab. Code Ann. § 408.126 (West 1996). These
benefits are available from the date MMI is certified and continue for three weeks for every
percentage point of impairment. Id. § 408.121(a). The impairment rating may also qualify an
employee for supplemental income benefits, which provide long-term disability compensation, if
the impairment rating is fifteen percent or higher. Id. § 408.142(a); Rodriguez, 997 S.W.2d at
253. Medical benefits continue whatever the impairment rating. See Tex. Lab. Code Ann.
§ 408.021(a) (West 1996) (providing medical benefits for health care "as and when needed").

 Fulton's seven-percent impairment rating entitled him to twenty-one weeks of
impairment income benefits; he did not qualify for supplemental income benefits. Dr. Arnold
discussed the significance of the impairment rating with Fulton on January 25, 1996. Fulton
acknowledged receiving a copy of his MMI and impairment rating certification on February 24,
1996.

 In May 1996, Fulton began working for a new employer. After three days, he
developed intense neck pain and headaches. Fulton returned to Dr. Arnold for treatment, who
again referred Fulton to Dr. Rosenstein. A cervical myleogram revealed a disc herniation with
bilateral nerve root compression; on September 11, 1996, Dr. Rosenstein determined that Fulton's
condition had deteriorated so seriously that he now required surgery. Dr. Rosenstein operated
on Fulton on October 4, 1996. In December 1996, Drs. Rosenstein and Arnold wrote to Fulton's
certifying doctor asking him to reconsider Fulton's MMI date and impairment rating. The
certifying doctor filed an amendment with the Commission rescinding the prior certification. The
doctor made a new determination that Fulton reached MMI on January 10, 1997, and assessed a
new impairment rating of twelve percent.

 On May 14, 1997, a contested case hearing was held and the hearing officer found
that under the 90-day Rule, the MMI and seven-percent impairment rating became final on
January 11, 1996. See 28 Tex. Admin. Code § 130.5(e). Fulton appealed to the Commission,
which affirmed that decision. Fulton then sued Associated Indemnity Corporation, (2) his
employer's insurance carrier for workers' compensation, challenging the validity of Rule 130.5(e). 
Both parties filed motions for summary judgment. The trial court granted Associated Indemnity's
motion for summary judgment and denied Fulton's motion. Fulton appeals that judgment to this
Court.


STANDARD OF REVIEW

 The propriety of summary judgment in this case is a question of law; therefore, we
review the trial court's decision de novo. See McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co., 7
S.W.3d 725, 728 (Tex. App.-Austin 1999, no pet.). When both sides move for summary
judgment and the trial court grants one motion and denies the other, we review the
summary-judgment proof presented by both sides and determine all questions presented. Comm'rs
Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). If we find error, we must render the judgment
the trial court should have rendered. Id.


DISCUSSION

 Fulton complains that the trial court erred in granting Associated Indemnity's
motion for summary judgment and in denying his motion because the Commission relied on an
invalid rule to determine that his MMI date and impairment rating had become final on January
11, 1996. He claims that the 90-day Rule is invalid because it contravenes the purpose of the Act
to provide benefits for injured employees, including those whose conditions deteriorate after MMI
certification and impairment ratings are assigned. He contends that the rule implicitly requires
that claimants dispute their MMI certification within ninety days of assignment even though the
Act allows two years for a claimant's condition to stabilize. (3) Fulton asserts that this result
imposes on claimants additional burdens, conditions, or restrictions in excess of, or inconsistent
with, the relevant statutory provisions. See Kelly v. Indus. Accident Bd., 358 S.W.2d 874, 876-77
(Tex. Civ. App.-Austin 1962, writ ref'd). By imposing burdens on the injured worker beyond
those authorized in the statute, he argues, the Commission has exceeded its authority in drafting
Rule 130.5(e).

 Associated Indemnity responds that Rule 130.5(e) legitimately implements the Act,
which mandates that an impairment rating be assigned and that any dispute be addressed with an
additional examination of the claimant. See Tex. Lab. Code Ann.§§ 408.123(a), .125(a) (West
1996). Associated Indemnity asserts that the rule "simply gives the claimant a time frame within
which he or she must dispute an impairment rating so that the determination of benefits may be
finalized." Such a rule, Associated Indemnity states, serves the important goals of (1) preventing
claims from continuing indefinitely, and (2) encouraging doctors to initially assign the correct
MMI and impairment rating. Furthermore, Associated Indemnity urges that the appellant's
challenge to the 90-day Rule is foreclosed by the supreme court's decisions in Rodriguez, 997
S.W.2d 248, and Lumbermens Mutual Casualty Co. v. Manasco, 971 S.W.2d 60 (Tex. 1998). 
We will first address the impact of the holdings in Rodriguez and Manasco on this appeal.


The Rodriguez Decision

 Rosa Rodriguez suffered a back injury on the job. She reached MMI and was
assigned an impairment rating. Approximately six months after her injury, Rodriguez's condition
deteriorated and her doctor recommended surgery. Rodriguez asked the Commission to change
her impairment rating. At that time, hearing officers of the Commission had recognized certain
ad hoc exceptions to the 90-day Rule, for example, when a claimant demonstrated a substantial
change of condition, a significant medical error, or a clear misdiagnosis. Rodriguez, 997 S.W.2d
at 254. The hearing officer determined that none of these exceptions applied to rescue Rodriguez
from the finality imposed by her failure to dispute her impairment rating within ninety days. (4) 
From this ruling Rodriguez appealed.

 The supreme court considered two questions in Rodriguez: (1) the proper standard
of review for an injured worker's appeal of the impairment rating's finality under Rule 130.5(e),
and (2) whether Rule 130.5(e) as written was subject to any exceptions. Id. at 251. The court
held that the appropriate standard of review was modified de novo, and that the plain language
of Rule 130.5(e) did not permit the Commission's hearing officers to infer any exceptions on a
case-by-case basis. Id.

 Rodriguez had argued that the Commission erred in not finding that she was entitled
to an exception from Rule 130.5(e) based on a substantial change of condition. Instead, the
supreme court found that the Commission could not grant individual exceptions to the 90-day Rule
through adjudicative decisions but must follow the rulemaking procedures established in the
Administrative Procedure Act (5) (the APA):


A presumption favors adopting rules of general applicability through the formal
rulemaking procedures as opposed to administrative adjudication. . . . Under these
[rulemaking] procedures the agency must provide notice, publication, and invite
public comment . . . . In this way, the APA assures that the public and affected
persons are heard on matters that affect them and receive notice of new rules.



Id. at 255 (citations omitted). The court noted that the APA rulemaking procedures were designed
to avoid the very problem the Commission created by informally amending the 90-day Rule on
a case-by-case basis:


We are unable to ascertain whether all Commission appeals panels or contested
case hearing officers recognize these exceptions or are obligated to apply them
consistently in all cases. And reading the Commission's rules would not give an
employee or insurance carrier notice of these exceptions to the 90-day Rule . . .
. Therefore, we do not recognize the ad hoc exceptions to the 90-day Rule that
Rodriguez argues, including substantial change of condition.



Id. at 255-56 (citations omitted). (6)

 Like Rodriguez, Fulton was denied an ad hoc exception to the 90-day Rule. The
holding in Rodriguez, decided after Fulton's contested case hearing, forecloses any claim in this
appeal that he was entitled to an ad hoc exception. Fulton, however, raises a different
complaint--that the 90-day Rule is invalid because the Commission has imposed a burden on the
injured worker contrary to the language and objectives of the Act. Our resolution of this issue
is in no way controlled by the supreme court's holding in Rodriguez that the Commission may not
informally amend Rule 130.5(e) by granting individual exceptions in adjudicative hearings.


The Manasco Decision

 Stan Manasco injured his back on the job and upon reaching MMI was assigned
a thirty-percent impairment rating. His employer's insurance carrier disputed the rating and the
Commission appointed a doctor to reevaluate Manasco. That doctor determined that Manasco's
impairment rating was seven percent. Manasco disputed the second rating. His dispute proceeded
through a benefit review conference and a contested case hearing. At both stages, Manasco lost. 
At the contested case hearing, the hearing officer concluded that the correct impairment rating was
seven percent. Manasco failed to seek an administrative appeal, and the seven-percent rating
became final. See Tex. Lab. Code Ann. § 410.169 (West 1996). Three months later, Manasco's
condition deteriorated and his doctor recommended surgery.

 Manasco relied on Labor Code section 410.307, entitled "Substantial Change of
Condition," to argue that because he had suffered a substantial change of condition, he could
reopen the issues of MMI and impairment rating, even though he had previously failed to exhaust
his administrative remedies. See id. § 410.307. The Commission held that section 410.307 did
not entitle Manasco to present additional evidence when his impairment rating had become final. 
The district court affirmed. The court of appeals reversed, construing section 410.307 to allow
the district court to consider evidence of Manasco's substantial change of condition, even though
he had failed to appeal the initial impairment rating from the contested case hearing.

 The issue presented to the supreme court was: "[W]hether a workers' compensation
claimant who failed to appeal his original impairment rating can reopen the issue months later by
arguing, under Texas Labor Code section 410.307, that a 'substantial change of condition' has
occurred." Manasco, 971 S.W.2d at 61. The supreme court answered that section 410.307 is
a rule of evidence that applies when a worker seeks judicial review of a Commission decision, but
that it does not act as a safety valve to excuse the claimant from exhausting his administrative
remedies before seeking judicial review. Id. at 63. Stated another way, Manasco holds that
section 410.307 does not provide the claimant an alternative path to judicial review.

 Fulton does not rely on section 410.307 to reopen his MMI certification and
impairment rating. Thus, his challenge to the validity of the 90-day Rule is not controlled by the
Manasco decision. (7)

The 90-day Rule

 To determine whether an agency rule exceeds statutory authority, we ascertain
whether the rule is in harmony with the general objectives of the statute. Int'l Ins. Agency, Inc.
v. R.R. Comm'n, 893 S.W.2d 204, 207 (Tex. App.-Austin 1995, writ denied). To make this
determination, we must look not only to a particular provision of the act, but to all applicable
provisions. Id. As in all questions of statutory interpretation, our goal is to determine and give
effect to the legislature's intent. Albertson's, Inc. v. Sinclair, 984 S.W.2d 958, 960 (Tex. 1999). 
We accomplish this task by first looking to the statute's plain and common meaning. Id.

 We liberally construe workers' compensation legislation to carry out its evident
purpose of compensating injured workers and their dependents. Id. at 961. An agency may not
supply by implication restrictions on an employee's rights that are not found in the plain language
of the Act. See Kroger Co. v. Keng, 23 S.W.3d 347, 349 (Tex. 2000). In construing the Act,
we may consider the circumstances under which it was enacted, former statutory provisions,
including laws on this or similar subjects, and the consequences of a particular construction. Id. 
Like the supreme court in Kroger, we look to Texas Workers' Compensation Commission v.
Garcia, 893 S.W.2d 504 (Tex. 1995), for guidance.

 In Garcia, the supreme court upheld the constitutionality of the Act. In considering
the open-courts challenge to the Act, the supreme court held that the relevant test was whether the
Act replaced a worker's common-law negligence cause of action with a meaningful alternative
remedy. Id. at 520 (citing Trinity River Auth. v. URS Consultants, Inc., 889 S.W.2d 259, 261
(Tex. 1994)). It determined that by providing a limited but more certain recovery, the statute
established a quid pro quo that would pass constitutional muster if the limited remedies were
"adequate." Id. at 521. The supreme court rejected the court of appeals' holding that impairment
is not an accurate measure of the economic hardship that a worker will suffer from an injury, and
that the fifteen percent impairment threshold for supplemental benefits denied long-term awards
to seriously disabled workers. Id. at 521-22. The court then pronounced the combination of
lifetime medical benefits, temporary income benefits during convalescence, impairment benefits,
and long-term income replacement for seriously disabled workers an adequate substitute for a
worker's negligence remedies. Id. at 523.

 The Garcia court next rejected a constitutional challenge to the Act's definition of
MMI that terminates temporary medical benefits after two years, regardless of whether the
claimant's condition has actually stabilized. Id. at 525. The supreme court noted that temporary
income benefits are "a major benefit" under the Act, and restricting those benefits to a two-year
period was only justified by medical testimony that most workers' conditions stabilize within that
time frame. (8) Id. Under this rationale, a rule that cuts off temporary income benefits before the
worker's condition has had two years to stabilize might be deemed arbitrary and might call into
question the adequacy of the entire statutory quid pro quo approved in Garcia.

 The statutory right to challenge an impairment rating is derived from Labor Code
section 408.125(a), which reads: "If an impairment rating is disputed, the commission shall direct
the employee to be examined by a designated doctor chosen by mutual agreement of the parties." 
Tex. Lab. Code Ann. § 408.125(a). Rule 130.5 provides procedures for insurance carriers to
dispute an impairment rating and to request selection of a designated doctor to assess impairment. 
28 Tex. Admin. Code § 130.5(a)-(d) (2000). The Labor Code does not mention disputes to an
MMI certification, but both parties agree that the claimant may challenge an MMI assessment. 
Rule 130.6 states that an employee may give notice to the Commission that the MMI certification
or impairment rating is being disputed. Id. § 130.6(a) (2000). Rule 130.6 does not impose a
deadline for disputing MMI certification.

 In its amicus brief, the Commission recognizes that the Act contemplates disputes
to MMI certification because an impairment rating cannot be assessed without first determining
the claimant's MMI. Notably, the supreme court has commented that the MMI and the
impairment rating are inexorably intertwined. See Rodriguez, 997 S.W.2d at 254 ("Any dispute
that challenges an impairment rating's finality necessarily implicates the date of maximum medical
improvement . . . ."). The Commission has repeatedly determined that a claimant's MMI
certification and impairment rating become final together or not at all, and that a dispute of an
impairment rating prevents an MMI certification from becoming final. Tex. Workers' Comp.
Comm'n, Docket No. EP-92-056244-02-CC-EP41 (Feb. 1, 1993); Tex. Workers' Comp.
Comm'n, Docket No. FW-92-050832-01-CC-FW42 (Nov. 12, 1992); Tex. Workers' Comp.
Comm'n, Docket No. BU-91-102266-02-92-CC-BU41 (Sept. 17, 1992).

 The 90-day Rule restricting the time period for disputing an impairment rating
implicitly limits a claimant's time period for revisiting the assessment of his MMI. See Tex.
Workers' Comp. Comm'n, Docket No. EP-92-056244-02-CC-EP41. Approximately six months
passed before Fulton had reason to question his MMI date and his impairment rating. When his
pain reoccurred, Fulton realized his dilemma: his MMI had been prematurely assessed because
his condition had not yet stabilized. By that time, Fulton was beyond the ninety-day deadline for
disputing his impairment rating, the single act that would have prevented his MMI certification
from becoming final. Fulton was foreclosed from reevaluating his MMI certification because of
the 90-day Rule for challenging his impairment rating. When his impairment rating became final,
so did the determination of his MMI.

 Fulton argues that Rule 130.5(e)'s explicit deadline for disputing his impairment
rating operates as an implicit deadline for establishing his final MMI, (9) and that the rule's arbitrary
ninety-day deadline from the date temporary income benefits begin impermissibly restricts the 
statutory deadline of 104 weeks for establishing a final MMI. Fulton asserts that the Commission
has exceeded its statutory authority by enacting a rule that imposes burdens not included in the
statute and thus the rule must be declared invalid. See Kelly, 358 S.W.2d at 877.

 The Act declares that the deadline for assessing MMI shall be the earlier of:



 the earliest date after which, based on reasonable medical probability, further
material recovery from or lasting improvement to an injury can no longer
reasonably be anticipated;

 the expiration of 104 weeks from the date on which income benefits begin to
accrue; or
 the date determined [by statute for spinal surgery].




Tex. Lab. Code Ann. § 401.011(30). The Act, then, "establishes what is in essence a two year
cap on temporary income benefits for all claimants" whether or not the claimant's condition has
stabilized. Garcia, 893 S.W.2d at 525.

 A rule that imposes a ninety-day time limit for a claimant's MMI assessment to
become final is at odds with the constitutionally significant 104-week time period under the Act
as recognized in Garcia. Id.; Tex. Lab. Code Ann. § 401.011(30). The legislature placed a two-year cap on the period that a claimant may wait to reach MMI. Tex. Lab. Code Ann.
§ 401.011(30). Nothing in the statute suggests that the two-year period may be shortened. By
enacting the 90-day Rule, the Commission has effectively shortened the time period in which an
injured worker may revisit the issue of maximum medical improvement. The plain language of
the statute allows up to two years for MMI to be reached. Id. Doctors may believe a claimant's
condition has stabilized and assess an earlier MMI date; despite all reasonable medical probability,
that claimant's condition may deteriorate within the two-year time period. Nothing in the statute
would foreclose reevaluating that claimant's medical condition within the two-year period; indeed,
the statute specifically gives an injured worker up to two years to reach maximum medical
improvement. Id. Because Rule 130.5(e) severely restricts the statutory time period for assessing
a final MMI, we hold that the agency exceeded its authority in enacting the rule.

 The dispute before us illustrates the arbitrary burden the 90-day Rule imposes. 
Fulton's doctors all agreed that their assessment of his MMI was premature and should be
rescinded. When did his deterioration occur? Under the plain language of the Act, if a worker's
condition deteriorates within the two-year period, it may be reevaluated; if it deteriorates more
than two years after income benefits begin to accrue, the worker has no recourse. Id. This is the
balance struck by the statutory scheme. The supreme court relied on the two-year period to hold
this balance reasonable and not arbitrary. Garcia, 893 S.W.2d at 525. Rule 130.5(e) imposes
a ninety-day period for reevaluation of a worker's medical condition. 28 Tex. Admin. Code
§ 130.5(e). Fulton's condition deteriorated within six months, so the 90-day Rule, but not the
Act, prevented his doctors from reassessing his MMI. We hold the rule arbitrary and invalid
because it impermissibly shortens the statutory time period allotted to an injured worker to achieve
MMI.

 The Commission, as amicus, argues that section 401.011(30) does not give a
claimant up to two years to challenge an MMI certification because it permits certification prior
to the end of the two years based on "reasonable medical probability" that "further material
recovery . . . can no longer reasonably be anticipated." See Tex. Lab. Code Ann.
§ 401.011(30)(A). The supreme court has noted that the Commission previously read that section
to permit revisiting the MMI assessment anytime before the 104-week deadline. See Rodriguez,
997 S.W.2d at 258 (Phillips, C.J., concurring). After a draft of Rule 130.5(e) was published for
public comment, a critic complained that the proposed ninety-day deadline was unnecessary and
would preclude revisiting an impairment rating. Id. The Commission defended its rule, stating
that "allowing the impairment rating to be revisited would only allow a doctor to assign an
inappropriate impairment rating to begin with, which should be discouraged. Additionally, after
the 104-week MMI . . . threshold has been reached, MMI cannot be revisited." Id. (citing 16
Tex. Reg. 177 (1991)) (emphasis added). 

 Both parties agree that the Act permits disputes to MMI certification even though
the Act does not specifically so provide. Section 401.011(30)'s language states, "'Maximum
medical improvement' means" before defining the time frames for determining MMI. Tex. Lab.
Code Ann. § 401.011(30) (emphasis added). We will not add to this definition a reading that once
MMI is assessed, it becomes final by some arbitrary deadline not contained in the statute; we may
not imply restrictions on injured employees that are not found in the plain language of the Act. 
See Kroger, 23 S.W.3d at 349.

 We hold that section 401.011(30) establishes a 104-week deadline for a worker to
achieve maximum medical improvement. The Commission may not, by rule, shorten this
statutory period. See id. To do so would impose restrictions in excess of those imposed by the
Act. See Kelly, 358 S.W.2d at 877. We declare Rule 130.5(e) invalid to the extent it prevents
a reassessment of MMI certification because the impairment rating or MMI was not disputed
within ninety days. Nothing in the statute prevents revisiting the MMI if a deterioration in
medical condition occurs within the statutory 104-week period. The statute affords Fulton two
years for his medical condition to stabilize. No rule may diminish that time allotment.

 Because the rule is invalid, we hold that the trial court erred in granting summary
judgment in favor of Associated Indemnity and in denying Fulton's motion for summary
judgment. We sustain Fulton's points of error.


CONCLUSION

 We hold that Rule 130.5(e) imposed on Fulton a restriction in excess of that found
in the plain language of the Act and that Fulton's MMI certification, and therefore his impairment
rating, did not become final. We reverse the trial court's order granting Associated Indemnity
summary judgment and render summary judgment in favor of Fulton.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Reversed and Rendered

Filed: April 12, 2001

Publish

1. Section 408.124 provides that the American Medical Association's "Guides to the
Evaluation of Permanent Impairment" shall be used to determine the existence and degree of an
employee's impairment. Tex. Lab. Code Ann. § 408.124(b) (West Supp. 2001).
2. The Workers' Compensation Commission participates as amicus curiae in this appeal.
3. The Act does not provide any deadline per se for disputing either the MMI or the
impairment rating.
4. The Commission appeals panel affirmed. Rodriguez v. Serv. Lloyds Ins. Co., 997 S.W.2d
248, 252 (Tex. 1999). Rodriguez then sued the insurance carrier in district court. The district
court sustained the insurance carrier's special exceptions to Rodriguez's pleadings and ordered
Rodriguez to replead seeking relief reviewable under the substantial evidence rule. She did so,
but failed to further comply with the district court's orders for repleading. The district court
dismissed Rodriguez's cause of action. The First Court of Appeals affirmed. Id.
5. See Tex. Gov't Code Ann. §§ 2001.001-.038 (West 2000).
6. In response to the harsh effects of the Rodriguez decision, the Commission amended Rule
130.5 to include the exceptions previously applied on an ad hoc basis. The amended rule reads
in relevant part:



 The first certification of MMI and impairment rating assigned to an employee
is final if the certification of MMI and/or the impairment rating (IR) is not
disputed within 90 days after written notification of the MMI and IR is sent by
the Commission to the parties, as evidenced by the date of the letter, unless
based on compelling medical evidence the certification is invalid because of:

 
 a significant error on the part of the certifying doctor in applying the
appropriate AMA Guides and/or calculating the impairment rating;

 a clear mis-diagnosis or a previously undiagnosed medical condition; or

 prior improper or inadequate treatment of the injury which would render
the certification of MMI or impairment rating invalid.

 
 This rule applies to certifications of MMI and impairment ratings that have not
become final prior to the effective date of this rule.



28 Tex. Admin. Code § 130.5(e)-(f) (2001); see also 25 Tex. Reg. 2102, 2105 (2000). Both
parties agree that the current version of Rule 130.5 has no application in this case.
7. Associated Indemnity refers us to the following language in Manasco:


If the Legislature had wanted to provide an open-ended means to challenge an
impairment rating, it could have done so; instead, the Legislature provided a narrow
exception to allow a claimant to present evidence of substantial change of condition
that is discovered for the first time during the appeal process.


Lumbermens Mut. Cas. Co. v. Manasco, 971 S.W.2d 60, 64 (Tex. 1998). This language has no
bearing on the validity of the 90-day Rule.
8. The court explained that even when the medical condition has not stabilized after two years,
the claimant will benefit from an inflated impairment rating. Tex. Workers' Comp. Comm'n v.
Garcia, 893 S.W.2d 504, 525 (Tex. 1995). The court stated, "If the claimant is still recovering
after two years, the impairment rating, which is determined at maximum medical improvement,
will be higher than the actual degree of permanent impairment." Id.
9. The rule that Fulton challenges implicitly limited MMI disputes. See 28 Tex. Admin. Code
§ 130.5(e) (2000). Amended Rule 130.5(e) explicitly limits the time for disputing MMI
certification as well as impairment ratings. 28 Tex. Admin. Code § 130.5(e) (2001).


es Regular">Filed: April 12, 2001

Publish

1. Section 408.124 provides that the American Medical Association's "Guides to the
Evaluation of Permanent Impairment" shall be used to determine the existence and degree of an
employee's impairment. Tex. Lab. Code Ann. § 408.124(b) (West Supp. 2001).
2. The Workers' Compensation Commission participates as amicus curiae in this appeal.
3. The Act does not provide any deadline per se for disputing either the MMI or the
impairment rating.
4. The Commission appeals panel affirmed. Rodriguez v. Serv. Lloyds Ins. Co., 997 S.W.2d
248, 252 (Tex. 1999). Rodriguez then sued the insurance carrier in district court. The district
court sustained the insurance carrier's special exceptions to Rodriguez