**Jeffrey Scott LEIBENGOOD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–92–00345–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 18, 1993.

Kristine Woldy, Houston, for appellant.

Dan McCrory, Houston, for appellee.

Before ROBERTSON, CANNON and MORSE, JJ.

## OPINION

ROBERT E. MORSE, Jr., Former Justice, sitting by designation.

This is an appeal of a murder conviction. Appellant Leibengood claims that the evidence was insufficient, that he was denied a specific array of jurors, and that he was denied a jury charge on self-defense. We affirm.

We summarize the facts in the light most favorable to the verdict. Leibengood's air conditioner malfunctioned. He called his grandfather to come over and repair it. Before his grandfather arrived, Leibengood laid a small-caliber pistol on the sofa and covered it with a towel or blanket. Leibengood's grandfather arrived and was sitting in a chair when Leibengood became agitated, pulled out the pistol, and fired.

Ms. Betty Wesley, who lived across the street from Leibengood, heard four gunshots and saw Leibengood running out of his front door. Leibengood ran to the clubhouse of the apartment project where he said to Ms. Kathleen Kuzik, a real estate agent, "Someone's been shot." She called 911. Leibengood waited near the clubhouse until police arrived. When Deputy Constable Ronald Brumley arrived, Leibengood pointed to a corner apartment and said, "It's my grandfather. We were arguing." Brumley asked Leibengood for the gun, and Leibengood told him that it was on a stand next to a chair. Brumley put Leibengood inside the patrol car.

Brumley went inside the townhome and found the body of Leibengood's grandfather

sitting in a chair. Police found an empty .25 caliber automatic pistol and seven spent shell casings. The victim was unarmed. At the victim's feet was a small screwdriver and flashlight. In his back pocket was a pair of pliers and a small volt/ohm meter. The physical evidence suggested that the victim was holding the screwdriver and flashlight in one hand and dropped them when he was shot.

A post-mortem examination of the body revealed that the victim sustained four .25 caliber gunshot wounds—one in the right upper chest, one in the right lateral chest, one in the right lateral shoulder, and one in the right upper arm which passed through the arm and entered in the lower lateral chest. Due to the downward direction of the bullet tracks, the medical examiner opined that the deceased was sitting when he was killed.

Leibengood gave police a videotaped statement in which he admitted killing his grandfather. While in jail, he called Jill Miller, a friend, and said, "This is Scott. I'm in jail. I had an argument with my grandfather, and I shot him." When Miller visited Leibengood in jail, he told her, "My grandfather would never say he was sorry."

A jury found Leibengood guilty of murder. He appeals.

In point of error one, Leibengood complains that the evidence was insufficient to show that he caused the death of his grandfather intentionally and knowingly.

On review of the sufficiency of the evidence, we view the evidence in the light most favorable to the State and affirm the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 238–39 (Tex.Crim.App.1989). Where the record supports conflicting inferences, we presume that the trier of fact resolved such conflicts in favor of the State. *Jackson, supra* 443 U.S. at 326, 99 S.Ct. at 2792. The jury is the sole judge of the credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). We may not sit as the thirteenth juror and reweigh the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

In the light most favorable to the verdict, we summarize the evidence bearing on Leibengood's criminal intent. There was evidence from two psychiatric experts that Leibengood was sane and competent. There was evidence of planning, i.e., Leibengood's prepositioning and concealing of the pistol on the sofa. There were seven spent shell casings, with four shots striking the victim. Finally, Leibengood used a deadly weapon against his grandfather. *See Flanagan v. State*, 675 S.W.2d 734, 744 (Tex.Crim.App. 1984) (intent to kill may be inferred by the jury from the use of a deadly weapon). While Leibengood's killing of his grandfather may appear senseless, "[I]t is never indispensable to a conviction that a motive for the commission of crime should appear." *Preston v. State*, 8 Tex.Ct.App. 30, 38 (1880).

We find that any rational trier of fact could have found beyond a reasonable doubt that Leibengood caused the death of his grandfather knowingly and intentionally. We overrule point one.

In point two, Leibengood contends that the trial court erred in denying his motion for a specific array of jurors.

Leibengood is a dwarf, between 4′5″ and 4′8″. He filed a motion for a specific array of jurors to be assembled for his trial. He wanted some persons in the venire under five feet tall who would understand the prejudices of taller people against little people and the emotional and mental processes of little people. He wanted at least an opportunity for a jury of his peers.

He argues that dwarf persons are a cognizable group. They have common needs and attitudes, as well as experiencing common frustrations and discriminations. Particularly because the penal code allows evidence of the previous relationship existing between the accused and the deceased in a criminal homicide prosecution, together with any relevant facts and circumstances going to show the condition of the mind of the accused at

the time of the offense, the availability of at least some persons who can relevantly examine the viewpoint of the accused was essential. *See* Tex.Penal Code Ann. § 19.06 (Vernon Supp.1993).

Leibengood asserts that the denial of his motion for a specific array of jurors denied him his right to a fair and impartial jury under the United States and Texas Constitutions. U.S. Const. amend. VI; Tex. Const. art. I, § 10. He contends also that it denied him his right to equal protection of the law. U.S. Const. amend. XIV; Tex. Const. art. I, § 3a.

■ "The Sixth Amendment requirement of a fair cross section on the venire is a means of assuring, not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does)." *Holland v. Illinois,* 493 U.S. 474, 479, 110 S.Ct. 803, 807, 107 L.Ed.2d 905 (1990) (emphasis in original). That is, there is "no requirement that the petit juries *actually chosen* must mirror the community and reflect the various distinctive groups in the population." *Id.* at 483, 110 S.Ct. at 808–09, citing *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 537, 42 L.Ed.2d 690 (1975) (emphasis added); *Seubert v. State,* 787 S.W.2d 68, 70 (Tex. Crim.App.1990). Nevertheless, the Sixth Amendment entitles a defendant to object to a venire produced by a system not designed to generate venires representing a fair cross-section of the community. *Holland, supra* 493 U.S. at 475, 110 S.Ct. at 805. In this regard, Article I, § 10 of the Texas Constitution provides the same protection. *Marquez v. State,* 725 S.W.2d 217, 243 (Tex.Crim.App. 1987), *cert. denied,* 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987).

To establish a prima facie violation of the fair cross-section requirement, a defendant must show that: (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Weaver v. State,* 823 S.W.2d 371, 372–73 (Tex.App.—Dallas 1992, pet. ref'd), citing *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

■ Even assuming that people under five feet tall are a "distinctive" group, Leibengood failed to meet prongs two and three of the *Duren* test. He did not provide any statistical evidence on the percentage of the community made up of little people or the statistical profile of venire panels, so that any underrepresentation of little people on jury venires could be demonstrated. *See Weaver, supra* at 373. Nor did Leibengood show that any underrepresentation was due to the systematic exclusion of little people from the jury-selection process.

■ As for Leibengood's equal protection claims under the United States and Texas Constitutions, the test for impermissible discrimination is whether a government-created classification caused similarly situated individuals to be treated differently without rational justification. *Bullock v. Regular Veterans Ass'n, Post No. 76,* 806 S.W.2d 311, 313 (Tex.App.—Austin 1991, no writ). The burden was on Leibengood to show that a contested statute or practice deprived him of equal protection under the law. *See id.* But Leibengood offered no evidence that the State had identified the class of persons of short stature for discriminatory treatment as far as eligibility and selection for jury venires. In fact, the crux of Leibengood's complaint is that little people *are not treated differently.* He would have little people sought out and purposefully inserted into jury venires unlike any other segment of society.

We find that Leibengood's constitutional rights were not violated and that the trial court did not abuse its discretion in denying Leibengood's motion for a specific array of jurors. We overrule point two.

In point three, Leibengood maintains that the trial court erred in denying his request for a self-defense jury charge. Leibengood argues that there was ample testimony from psychiatrists and himself that he feared his grandfather. There was testimony that a flashlight and screwdriver were found at the feet of the deceased.

To be entitled to an instruction on self-defense, the accused must reasonably believe that the use of force is immediately necessary. *Jones v. State,* 544 S.W.2d 139, 142 (Tex.Crim.App.1976); TEX.PENAL CODE ANN. § 9.31(a) (Vernon 1974). If the evidence raises the issue of self-defense, the accused is entitled to have it submitted to the jury. *Semaire v. State,* 612 S.W.2d 528, 530 (Tex.Crim.App.1980). An accused is entitled upon timely request to an instruction on every affirmative defense raised by the evidence, whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that it is not entitled to belief. *Warren v. State,* 565 S.W.2d 931, 933–34 (Tex.Crim.App.1978).

However, "In order to raise self-defense as an issue, there must be some evidence of aggression on the part of the deceased." *Thompson v. State,* 659 S.W.2d 649, 653 (Tex. Crim.App.1983). "In absence of evidence of use or attempted use of deadly force by the deceased, the statutory defense [of deadly force in defense of person] is not available, and a defendant is not entitled to a jury instruction." *Werner v. State,* 711 S.W.2d 639, 644 (Tex.Crim.App.1986); TEX.PENAL CODE ANN. § 9.32 (Vernon Supp.1993).

Here, Leibengood never testified that he believed it was necessary to kill the victim to protect himself from death or serious bodily injury. There was no evidence that the victim in this case ever threatened Leibengood, that he ever brandished a weapon, that he ever moved toward Leibengood, or that he even got out of the chair in which he died. An excerpt from Leibengood's testimony is instructive:

Q: [Defense Counsel] Well, you remember that Sergeant Doyle testified that they found a screwdriver and a flashlight right next to his chair where he was sitting. Anything happen to cause you to get all upset?

A: [Leibengood] Yeah. I guess I was afraid of him and—and afraid that it—he was going to hurt me with the screwdriver.

Q: But I guess specifically I'm asking you: Did he get up and come at you with the screwdriver or flashlight or make any overt motions to harm you, that you remember?

A: None that I can remember of, no.

\* \* \* \* \* \*

Q: [Prosecutor] And isn't it—Mr. Leibengood, isn't it true that, as he was sitting there, as your 74-year-old grandfather was sitting in the blue chair, he was patiently talking with you, tapping the screwdriver on his hand or on the arm of the chair? He wasn't brandishing at you was he? He wasn't lunging at you from the blue chair, was he?

A: [Leibengood] I don't—I don't recall him getting up from the chair.

Q: You don't recall him getting up from the chair because he never did, did he?

A: No.

We find that there was no evidence that Leibengood could have reasonably believed that the use of force was immediately necessary to protect himself. He was not entitled to a jury instruction on self-defense. We overrule point three.

Finding no error, we affirm.