# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00215-CV

**Patient Advocates of Texas and Allen J. Meril, M.D., Appellants**

**v.**

**Texas Workers Compensation Commission; Leonard Riley, Executive Director; and State of Texas, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. 96-03744, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING**

---

Patient Advocates of Texas and Allen J. Meril, M.D. (collectively AAdvocates@) brought suit against the Texas Workers Compensation Commission, Leonard Riley, Executive Director, and the State of Texas (collectively Athe Commission@) challenging the validity and enforcement of a series of rules promulgated by the Commission. After a number of summary judgment motions were filed by both parties over a period exceeding four years, the trial court rendered a final judgment denying all of Advocates= claims and granting judgement for the Commission. Advocates raises six issues in this appeal challenging the Commission=s rules on both procedural and substantive grounds. We will affirm in part and reverse and render in part.

**BACKGROUND**

In 1989, the Legislature enacted a new Workers= Compensation Act (hereinafter the AAct@) restructuring the workers= compensation law in Texas.[1] The new Act replaced the old system that had become increasingly expensive and was suffering from a loss of public confidence. Medical costs for injured workers within the workers= compensation system began increasing at a much higher rate than similar costs outside the system. These increases helped cause workers= compensation insurance premiums to more than double between 1984 and 1988. *See Texas Workers=Compensation Comm=n v. Garcia*, 893 S.W.2d 504, 512 (Tex. 1994).

---

[1] The new Act, initially located in articles 8308-1.01 through 8308-11.10 of the Texas Revised Civil Statutes Annotated, was codified in September 1993 and now appears in the Labor Code. *See* Tex. Lab. Code Ann. '' 401.001-506.002 (West 1996 & Supp. 2002). For convenience, we refer to the Labor Code.

In response to these mounting costs, the Legislature gave the newly created Commission sweeping new powers. One of these powers was in the area of medical costs and reimbursement. *See* Tex. Lab. Code Ann. ' 413.011 (West 1996).[2] Pursuant to that section, the Legislature directed the Commission to set new guidelines for reimbursements to health-care providers treating injured workers. *Id.* ' 413.011(a)(1). In so doing, the Legislature assigned the Commission the daunting task of designing a guideline that provides fair and reasonable reimbursements, ensures the quality of medical care, and simultaneously achieves effective medical cost control. *Id*. ' 413.011(b).

---

[2]    Section 413.011 reads as follows:

(a)   The commission by rule shall establish medical policies and guidelines relating to:

   (1)   fees charged or paid for medical services for employees who suffer compensable injuries, including guidelines relating to payment of fees for specific medical treatments or services;

   (2)   use of medical services by employees who suffer compensable injuries; and

   (3)   fees charged or paid for providing expert testimony relating to an issue arising under this subtitle.

(b)   Guidelines for medical services fees must be fair and reasonable and designed to ensure the quality of medical care and to achieve effective medical cost control. The guidelines may not provide for payment of a fee in excess of the fee charged for similar treatment of an injured individual of an equivalent standard of living and paid by that individual or by someone acting on that individual's behalf. The commission shall consider the increased security of payment afforded by this subtitle in establishing the fee guidelines.

Tex. Lab. Code Ann. ' 413.011 (West 1996).

To fulfill this difficult statutory command, the Commission, pursuant to its rule-making authority, enacted Rule 134.201 (the AGuideline@), which sets certain limits on medical fees that can be charged by health care providers and contains the 1996 Medical Fee Guideline that constitutes the major part of this dispute.[3] In addition, as part of the medical reimbursement scheme, the Commission enacted Rules 133.300-.305 (the ADispute and Audit Rules@), which govern the dispute resolution and auditing procedures of physicians= bills by insurance carriers.[4]

Advocates challenges the Guideline=s validity on procedural grounds, contending that the Commission failed to follow proper procedure in promulgating its rule. Advocates also asserts that the Commission=s rules are substantively invalid because the Guideline places an impermissible ceiling on medical costs. Additionally, Advocates contends that the Dispute and Audit Rules improperly delegate oversight and dispute resolution powers to private insurance carriers and create a statute of limitations that is contrary to the Act. Finally, Advocates presents constitutional challenges that the rules lack a rational basis and violate the principles of due process and equal protection.

## PROCEDURAL CHALLENGE

---

[3] The Guideline is codified at 28 Texas Administrative Code section 134.201 (1997).

[4] The Dispute and Audit Rules are codified at 28 Texas Administrative Code sections 133.301-.305 (2002). The Dispute and Audit Rules have been amended since this action commenced in the district court. We cite to the version currently in effect, as do the parties.

In its first issue, Advocates contends that the Guideline is invalid because the Commission failed to follow the proper rule-making procedures set forth in the Administrative Procedure Act (the AAPA@). Tex. Gov=t Code Ann. ' 2001.002 (West 1996).[5] Included in Advocates= argument that the Guideline fails to substantially comply with the procedural rule-making requirements are specific complaints that the Commission: (i) failed to provide a reasoned justification for the Guideline, *id.* ' 2001.033(1); (ii) failed to republish the Guideline after altering it, *id.* ' 2001.023(a); (iii) failed to make a copy of the proposed rule available, *id.* ' 2002.014; and (iv) failed to provide a statement of reasons for adoption of the Guideline, *id.* ' 2001.030. Because these complaints are interrelated, we will address them together.

The APA requires that when an administrative agency adopts a rule, it must, at the same time, state a reasoned justification for the rule. *Id.* ' 2001.033. Thus, the agency must explain how and why it reached its conclusions, and it must do so in a logical and unambiguous manner. *See National Ass=n of Indep. Insurers v. Texas Dep=t of Ins.*, 925 S.W.2d 667, 669 (Tex. 1996) (ANAII@); *Texas Hosp. Ass=n v. Texas Workers=Compensation Comm=n*, 911 S.W.2d 884, 886-87 (Tex. App.CAustin 1995, writ denied). In addition to a reasoned justification, the order adopting the rule must include a summary of the comments the agency received from interested parties, a restatement of the rule=s factual basis, and the reasons why the agency disagrees with the comments. Tex. Gov=t Code Ann. ' 2001.033; *NAII*, 925 S.W.2d at 669. The APA places an affirmative duty on an agency to summarize the evidence it considered,

_____

[5] We refer to the version of the APA in effect when the Commission adopted the Guideline.

state a justification for its decision based on that evidence, and demonstrate that its justification is reasoned. *NAII*, 925 S.W.2d at 669.

If an order does not substantially comply with these requirements, the rule is invalid. Tex. Gov=t Code Ann. ' 2001.035(a) (West 1996). Although the Legislature has amended the APA with respect to the standard for a reasoned justification, we are required to examine this case under the standard in effect pre-amendment.[6] Prior to the enactment of the amended APA, this Court further stated that substantial compliance requires a penetrating analysis of the alternatives to the proposed rule. *See Hosp. Ass=n*, 911 S.W.2d at 884. We have also held that an agency=s order substantially complies with the reasoned justification requirement if it accomplishes the legislative objectives underlying the requirement and comes fairly within the character and scope of each of the statute=s requirements in concise, specific and unambiguous terms. *See Methodist Hosps. v. Industrial Accident Bd.*, 798 S.W.2d 651, 657-59 (Tex. App.CAustin 1990, writ dism=d w.o.j.). Thus, the APA was designed to compel an administrative agency to articulate its reasoning and, in the process, more thoroughly analyze its rules. *See NAII*, 925 S.W.2d at 671-72. Requiring an agency to demonstrate a rational connection between the facts before it and the agency=s rule promotes public accountability and facilitates judicial review. *See id.* at 669.

---

[6] The 76th Legislature amended the APA=s reasoned justification requirements. *See* Act of Jan. 18, 1999, 76th Leg., R.S., ch. 558, ' 2, 1999 Tex. Sess. Law Serv. 9, 3090 (West 1999) (current version at Tex. Gov=t Code Ann. ' 2001.039). This revised statute supercedes prior case law; however, it does not apply to the Guideline which was adopted before January 1, 1998. *See id.*

The Commission adopted the Guideline by publishing a preamble to the rule in the March 22, 1996 issue of the Texas Register. 21 Tex. Reg. 2361-2392 (1996) (codified at 28 Tex. Admin. Code ' 134.201). The Commission explained the contents of the preamble as follows:

> As required by the Government Code, ' 2001.033(1), the commission=s reasoned justification is set out in this preamble. The reasoned justification is contained throughout the preamble, including the following portions: the reasons why the new rule and repeal are necessary; the factual, policy, and legal basis for the rule; restatement of the factual basis of the rule; a summary of comments received; names of those who commented and whether the commenters were for or against adoption of the new rule and repeal; and the reasons why the agency disagrees with some of the comments, submissions, and proposals.

In the preamble, the Commission explained that it had studied other states= reimbursement systems and the guidelines employed across the country. That study found that Texas=s reimbursement system exceeded the national average, and, thus, the Commission enacted the new Guideline Ato move Texas towards a market based system which reimburses based on values set by the market for procedures . . . .@ The Commission then explained in great detail the factual, policy, and legal rationale behind the Guideline.

The Commission explained that the Guideline contains, as the primary vehicle for cost containment, a list of maximum allowable reimbursement codes. As a model for its list, the Commission relied on a list of similar codes, referred to as CPT codes, published by the American Medical Association. The Guideline requires that medical care providers use these codes when submitting reimbursement claims to the workers= compensation insurance carriers. The provider must select the code that most accurately identifies the services required by a particular patient and present a bill to the insurance carrier with both the

**7**

identifying code or codes and the provider=s usual charges for those services. The carrier will then reimburse the provider the *lesser* of either the usual charge as billed or the Guideline=s maximum allowable reimbursement. Following the nearly five-page explanation of the basis for the Guideline, the Commission listed the persons and groups that submitted comments concerning its proposed Guideline. The Commission then listed summaries of the comments received. Following each comment, the Commission provided its response.

The legislative objective of the reasoned-justification requirement is to give notice of the factual, policy, and legal bases for the rule, as adopted or construed by the agency, in light of all the evidence gathered by the agency and submitted by interested parties during the comment period. *Lower Laguna Madre Found., Inc. v. Texas Natural Res. Conservation Comm=n*, 4 S.W.3d 419, 427-28 (Tex. App.CAustin 1999, no pet.). In the preamble, the Commission did more than merely comply with the APA=s requirements. The preamble clearly and exhaustively explains the Commission=s reasons for enacting the Guideline. Additionally, the preamble demonstrates that the Commission considered the comments in full and provided adequate rationale for its decisions. We therefore conclude that the Commission substantially complied with the reasoned-justification requirement of the APA.

Having determined that the Commission complied with the APA=s requirement that an agency provide a reasoned justification for a rule, we now turn to Advocates= remaining procedural challenges to the Guideline. The APA requires that an agency give at least thirty days= notice of its intention to adopt a rule before doing so. Tex. Gov=t Code Ann. ' 2001.023(a). Advocates claims that the Commission failed to comply with this provision because it amended the Guideline after its initial publication

8

and then failed to republish it.[7]  If, after initial publication, a proposed rule is amended so that it affects other persons than those originally put on notice, then the agency must commence a new notice and comment period.  *State Bd. of Ins. v. Deffebach*, 631 S.W.2d 794, 801 (Tex. App.CAustin 1982, writ ref=d n.r.e).  However, after proper notice and hearing, should the agency amend the proposed rule such that no one other than those previously given notice would be affected, no further purpose would be served by requiring republication of the proposed rule.  *Id.*

---

[7]     The Guideline was adopted by reference to an earlier published version of its text in the Texas Register pursuant to section 2002.014 of the Government Code.  Tex. Gov=t Code Ann. ' 2002.014 (West 1996).  That section allows the Secretary of State to omit otherwise required information from the Texas Register if production of that information would be expensive or cumbersome and copies of the omitted information are made available at a specified place.  *Id*.

In the present case, the Guideline, as originally published, did not contain the section concerning durable medical equipment that appears in the finalized version. The Commission took that section from a previously published proposed medical fee guideline applicable to hospitals.[8] The crux of Advocates=complaint is that the Guideline was not republished after the durable medical equipment section was added. Applying *Deffebach*, we decline to hold that the Commission has violated the APA by failing to republish the Guideline. The publication of the durable medical equipment section in the earlier medical fee guideline applicable to hospitals placed the same persons on notice regarding the same subject matter as did the publication of the current Guideline. Furthermore, by amending the Guideline to include the durable medical equipment section after initial publication, the Commission did not ignore or substantially alter the proposed rule to an extent that a new or different group of persons were affected. Therefore, we hold that a new period of notice and comment was not required in this case, nor was it necessary to republish the Guideline.

Advocates=final procedural challenge is that the Commission failed to make copies of the Guideline available. The APA allows the omission of otherwise required information from the Texas Register if production of that information would be expensive or cumbersome and copies of the omitted material are made available at a specified place. Tex. Gov=t Code Ann. ' 2002.014. The Guideline, which is acknowledged by both parties as being voluminous, was adopted by reference because the Commission did not republish it along with the preamble. That the voluminous Guideline was not published does not

---

[8] The medical fee guideline applicable to hospitals was declared invalid by this Court in *Texas Hosp. Ass=n v. Texas Workers=Compensation Comm=n*, 911 S.W.2d 884, 886-87 (Tex. App.CAustin 1995, writ denied) because the Commission failed to provide a reasoned justification for that rule.

10

violate the APA. *See id.* Further, because the Commission specifically instructed interested parties that they could obtain copies at the Commission=s place of business, the Commission complied with the APA=s procedural directives. *See id.* Accordingly, we overrule all of Advocates= procedural challenges to the Guideline.

**SUBSTANTIVE CHALLENGE**

Advocates asserts that the Commission exceeded its statutory authority by imposing a mandatory cap on medical fees. The Commission responds that promulgating the Guideline falls within the Commission=s general delegation of authority to adopt rules necessary for the implementation and enforcement of the workers= compensation system. *See* Tex. Lab. Code Ann. ' 402.061 (West 1996). In particular, the Commission must establish, by rule, guidelines for fees charged by physicians treating injured workers. *Id.* ' 413.011(a)(1). In establishing those guidelines, the Commission must balance the inherently contradictory goals of ensuring participating physicians receive reasonable compensation while simultaneously maintaining effective cost control. *See id.* ' 413.011(b).

To determine whether an agency rule exceeds statutory authority, we ascertain whether the rule is in harmony with the general objectives of the statute. *International Ins. Agency, Inc. v. Railroad Comm=n*, 893 S.W.2d 204, 207 (Tex. App.CAustin 1995, writ denied). To make this determination, we must look not only to a particular provision of the Act, but to all applicable provisions. *Id.* As in all questions of statutory interpretation, our goal is to determine and give effect to the Legislature=s intent. *Albertson=s, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999). We accomplish this task by first looking to the Act=s plain and common meaning. *Id.* We liberally construe workers= compensation legislation to

**11**

carry out its evident purpose of compensating injured workers and their dependents. *Id.* at 961; *Fulton v. Associated Indem. Corp.,* 46 S.W.3d 364, 370 (Tex. App.СAustin 2001, no pet.).

Agencies are creatures of statute. *Sexton v. Mount Olivet Cemetery Assoc.*, 720 S.W.2d 129, 137 (Tex. App.СAustin 1986, writ ref=d n.r.e.). As such, agencies lack inherent authority and may only exercise those powers that are specifically granted to them by statute. *Id.*; *McDaniel v. Texas Natural Res. Conservation Comm=n*, 982 S.W.2d 650, 651 (Tex. App.СAustin 1998, pet. denied). However, agencies also have implied powers to do that which is necessary to carry out the specific powers delegated, for the Legislature intended a workable and effective exercise of the powers expressly and specifically granted the agency. *See Sexton*, 720 S.W.2d at 137-39 (full extent of power specifically granted to agency must be ascertained with due regard for rule that Legislature intends agency should have, by implication, such authority as may be necessary to carry out specific powers delegated).

In this case, Advocates complains that the Commission exceeded its statutory authority by establishing a mandatory ceiling on medical fees when the plain meaning and intent of the term Аguideline@ suggests a voluntary rather than a mandatory ceiling on medical fees. According to Advocates, the Guideline should do nothing more than provide a suggestive range of fees that the Commission considers to be fair and reasonable. In support of this argument, Advocates notes that the Act does not contain an express provision authorizing the Commission to impose a cap on fees. Advocates further contends that by establishing a ceiling, the Guideline deprives medical care providers of their statutory right to receive fair and reasonable value for their services.

**12**

The Commission, on the other hand, insists that there is nothing in the Act that prohibits a rule that imposes a mandatory cap on medical fees. Indeed, the Commission points to its mandate of controlling medical costs as strong evidence that the Legislature implicitly delegated to it the authority to set a ceiling on medical costs. Our review of the entire structure of the Act leads us to the conclusion that the Commission has this delegated power by implication, if not expressly.

The Legislature has mandated that the Commission reevaluate its guidelines every two years.

### ' 413.012 Medical Policy and Guideline Updates Required

The medical policies and fee guidelines shall be reviewed and revised at least every two years to reflect fair and reasonable fees and to reflect medical treatment or ranges of treatment that are reasonable or necessary at the time the review and revision is conducted.

Tex. Lab. Code Ann. ' 413.012. This provision suggests that the Guideline may impose mandatory caps on fees. Recognizing that the Commission might limit the maximum amount of reimbursements, the Legislature mandated that the Commission regularly review and revise the Guideline to ensure that the caps do not arbitrarily depress medical fees to an unreasonable level. The two-year adjustment mandate ensures that, as costs rise, the workers= compensation health care delivery system does not suffer as a result of inadequate medical fee reimbursement. In ascertaining whether the Guideline complies with the general objectives of the Act, we must look to all applicable provisions of the Act. *See International Ins. Agency*, 893 S.W.2d at 207. The inclusion of the two-year review provision in the Act provides support for the Commission=s position. The Legislature anticipated that the Commission might cap fees as a way to achieve

**13**

effective cost control. By including this provision in the Act, the Legislature ensured that those caps would be periodically evaluated to ensure that the Commission complied with its other mandate of maintaining fair and reasonable fees.

We note, however, that since the Act=s enactment in 1989 and the Commission=s promulgation of the initial medical fee guideline in 1991, the Commission has revised the guideline only once, that being the 1996 Guideline under review. In over a decade since the Legislature enacted the new workers= compensation statute, the Commission has yet to conduct biennial reviews. While this Court is concerned by the fact that the Commission has not yet complied with this section, that issue is not before us. Advocates presents this case as a facial challenge to the rule. Consequently, we are not presented with a record that demonstrates that health care providers are being unfairly compensated due to the Commission=s failure to conduct biennial reviews or that the quality of medical care within the workers= compensation system has suffered for that reason. In considering Advocates= substantive challenge, we are asked to answer a narrow question: Does the Commission have the power to authorize and impose mandatory ceilings on medical care costs in enacting the 1996 Guideline? After reviewing the statute and the arguments of the parties, we conclude in the affirmative and accordingly overrule Advocates= substantive challenge.

## ENFORCEMENT CHALLENGE

In its third issue, Advocates challenges the Commission=s rules concerning medical dispute resolution. Advocates complains that the Commission exceeded its statutory authority by promulgating the Dispute and Audit Rules that delegate auditing powers to private insurance carriers and impose a statute of

limitations on requests for dispute resolution filed with the Commission=s division of medical review.[9] The Commission rejoins that the Act authorizes it to establish a program for the systematic monitoring of the necessity of treatments and fees charged by physicians, and that the Dispute and Audit Rules provide the framework for that program. *See* Tex. Lab. Code Ann. ' 413.013.

Advocates contends that the Commission=s delegation of auditing powers violates the Act=s provisions and case law concerning the delegation of governmental powers to private entities. *See id.* ' 413.015(b); *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454 (Tex. 1997). The Legislature has mandated that the Commission provide for the review and audit of payments *by insurance carriers* to ensure that health care providers and the insurance carriers comply with the Guideline. Tex. Lab. Code Ann. ' 413.015(b). Advocates argues that, while the Act provides the authority for the Commission to conduct audits *of* insurance carriers, the Legislature did not expressly or implicitly grant the Commission the power to delegate any audit powers *to* insurance carriers. Because of this purported delegation by the Commission, Advocates contends that the Commission has violated health care providers= rights to a contested-case proceeding and due process because the rules improperly permit insurance carriers to exercise governmental regulatory powers and impose an affirmative duty on health care providers to comply with all of the carrier=s demands during an audit.

---

[9] The Act requires that the Commission maintain a division of medical review to ensure compliance with the Commission=s rules and to implement the provisions of the Act under the Commission=s policies. Tex. Lab. Code Ann. ' 413.002. The division of medical review must also monitor health care providers, insurance carriers, and workers= compensation claimants. *Id*.

Advocates asserts that by delegating unfettered auditing powers to private insurance carriers, the Commission has violated the standards established by the Texas Supreme Court in *Boll Weevil*. In that case, the supreme court held that a state function may be delegated to a private entity, but that delegation must be subject to certain standards. *Boll Weevil*, 952 S.W.2d at 472. In order to ascertain whether the delegation is proper, the court listed the following eight factors:

1. Are the private delegate=s actions subject to meaningful review by a state agency or other branch of state government?

2. Are the persons affected by the private delegate=s actions adequately represented in the decision-making process?

3. Is the private delegate=s power limited to making rules, or does the delegate also apply the law to particular individuals?

4. Does the private delegate have a pecuniary or other personal interest that may conflict with his or her public function?

5. Is the private delegate empowered to define criminal acts or impose criminal sanctions?

6. Is the delegation narrow in duration, extent, and subject matter?

7. Does the private delegate possess special qualifications or training for the task delegated to it?

8. Has the Legislature provided sufficient standards to guide the private delegate in its work?

*Id.* The validity of a delegation does not hinge on any one factor. *Id.* at 475. *Boll Weevil* mandates that we view the Commission=s delegation to private insurance carriers narrowly to determine whether that delegation conforms to the essence of the eight factors. *See id.*

**16**

The Dispute and Audit Rules permit insurance carriers to retrospectively review all medical bills submitted. In conducting this review, the carriers may conduct an onsite audit of the health care provider. The retrospective review and audit allows the insurance carrier to audit the health care provider for (a) compliance with the Guideline, (b) duplicate billing, (c) billing for treatment or services unrelated to the compensable injury, (d) accuracy of coding in relation to medical records and reports, (e) accuracy of medical charges, and (f) unnecessary or unreasonable treatment or services. The Dispute and Audit Rules also require that, during an onsite audit, the health care provider *must provide* the carrier with all notes, reports, test results, narratives, and other documentation the provider has relating to the claims identified as being the subject of the audit.

The Commission argues that this delegation complies with the *Boll Weevil* standards. The first *Boll Weevil* factor requires that the insurance carriers= actions in conducting the audits are subject to meaningful review by the Commission or another branch of state government. The Commission emphasizes that because parties may obtain final review of a payment decision at a hearing conducted by the State Office of Administrative Hearings, the delegation complies with the first *Boll Weevil* factor. *See* Tex. Lab. Code Ann. ' 413.031(d). The availability of this review hearing, however, does not demonstrate that the insurance carriers are subject to a review of the manner in which audits are conducted, how carriers determine which health care providers to audit, the scope of an audit, or the demands placed on health care providers subject to an audit.

The second *Boll Weevil* factor requires that persons affected by the private delegate=s actions are adequately represented in the decision-making process. The Commission asserts that it has

17

complied with this factor because health care providers may challenge an insurance carrier=s reimbursement decision. However, health care providers must submit to the audit *prior* to a challenge before the Commission=s medical review division or a hearing by the State Office of Administrative Hearings. While the provider may have a representative present at the audit and may attempt to negotiate with the auditor, the provider=s representative has no authority to challenge the scope of the audit or the auditor=s decision concerning the disputed claims. The Commission argues that it provides the affected parties an early opportunity to settle their differences by requiring an exit interview where the auditor and the provider=s representative must discuss and attempt to resolve the dispute. However, this dispute resolution process appears to be illusory. As a practical matter, the health care provider has no authority to effect a resolution of the claim. Indeed, the entire audit process seems to grant all of the power to one of the parties involved, specifically the insurance carrier.

The fourth *Boll Weevil* factor asks whether the private delegate has a pecuniary or other personal interest that may conflict with its public function. The Commission recognizes that its delegation of auditing powers to insurance carriers creates a conflict of interest. But the Commission maintains that since the Commission is the final arbiter of the dispute resolution process, the conflict does not pose a problem. The Commission acknowledges that private insurance carriers and health care providers occupy adversarial positions in the workers= compensation system. While health care providers are entitled to reasonable reimbursement for treating injured workers, the insurance carriers= goal is to minimize the amount it pays to providers. This direct conflict of interest interferes with the insurance carriers= public function which, as

**18**

espoused by the Commission, is to establish a program that ensures compliance with the Guideline and furthers the policies of the workers=compensation system.

The final *Boll Weevil* factor clearly applicable to the private delegation is the sixth factor, which requires that the delegation be narrow in duration, extent, and subject matter. The Commission asserts that the many requirements it imposes on insurance carriers in conducting audits sufficiently limits the delegation, thereby complying with the sixth factor. For example, the carrier must pay half of the disputed claim and provide detailed notice of its choice to conduct an onsite audit, which includes the name and date of injury of the worker who received treatment, when those services were rendered, the name of the carrier=s representative, and the date of the audit. Certainly, these requirements provide the health care provider with sufficient notice as to when and where an audit will occur. But these notice and reimbursement requirements fall far short of any limitation on the *duration* of the audit, the *extent* of the audit, or the *subject matter* of the audit. These notice and reimbursement requirements merely affect an individual audit; they fail to address the essence of the fourth *Boll Weevil* requirement that the *delegation* be limited. Aside from these fairly stringent notice requirements, insurance carriers enjoy broad power to audit health care providers.

We conclude that the Commission has delegated audit powers to private insurance carriers without providing sufficient standards to guide carriers in the performance of their delegated public function. While the Commission has provided for a review of a decision made after an audit has occurred, it has not established procedures that enable a meaningful review of the insurance carriers= auditing practices. Additionally, the Commission has granted sweeping power to insurance carriers and has provided only

**19**

illusory representation to health care providers. Therefore, because the Commission has failed to demonstrate that it has complied with the *Boll Weevil* standards, we conclude that this is an improper delegation. Accordingly, we hold that the provisions of the Dispute and Audit Rules delegating auditing powers to private insurance carriers are invalid. We now turn to Advocates= complaint regarding the imposition of a one-year statute of limitations on dispute resolution.

The Dispute and Audit Rules contain the following statute of limitations on parties seeking medical dispute resolution, AA party shall file a request for medical fee, medical necessity, or injured employee medical reimbursement dispute resolution with the Division not later than one year after the date(s) of service in dispute.@ The primary purpose of a statute of limitations is to ensure that claims are asserted within a reasonable time, giving the opposing party a fair opportunity to prepare a defense while evidence is still available. *Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692, 694 (Tex. 1990). A statute of limitations also ensures that notice of claims is given to adverse parties in order to prevent fraudulent and stale claims from springing up at great distances of time and surprising the other party. *Hallaway v. Thompson*, 226 S.W.2d 816, 820 (Tex. 1950). The Commission=s imposition of time limits for presenting claims complies with the general purpose of a statue of limitations. Accordingly, we overrule Advocates= issue regarding the imposition of a statute of limitations.

## CONSTITUTIONAL CHALLENGE

Advocates also brings constitutional challenges to the Commission=s rules. Advocates contends that the Guideline is constitutionally defective because the manner in which the Commission established the maximum allowable reimbursement codes is arbitrary and lacks a rational basis. As we have

**20**

previously discussed, the Commission promulgated the Guideline as the means to achieve cost containment because the fee limits established by the 1991 guideline far exceeded the national average for fair and reasonable fees in a workers= compensation system. The Guideline reflects the Commission=s effort to meet the Act=s stated goal of ensuring quality medical care while achieving cost control. Advocates asserts that any variances of twenty-five percent below the fee levels established in 1991 demonstrate that the Guideline is arbitrary on its face because the Commission stated in the preamble that such variances are Astatistical outliers.@ Advocates refers us to a single code that varies by seventy percent. This code provides an example of a Astatistical outlier.@ However, one anomaly does not render the entire Guideline invalid due to arbitrariness.

Advocates also seeks a determination that the Guideline lacks a rational basis because it attempts to *reduce* rather than *control* costs. Advocates contends that the Act requires cost *control* and that any attempt to *reduce* costs exceeds the Commission=s authority, thus rendering its actions unconstitutional. We disagree. The Act grants the authority to achieve cost control. If the Commission deems a particular fee excessive, it may act to reduce that fee in order to achieve its goal. We overrule Advocates= first constitutional challenge.

Advocates claims that the Guideline violates the principle of equal protection because it treats anesthesiologists differently than other physicians. The test for impermissible discrimination is whether the classification causes *similarly situated* persons to be treated differently without rational justification. *Bullock v. Regular Veterans Ass=n of U.S. Post No. 76*, 806 S.W.2d 311, 313 (Tex. App.CAustin 1991, no writ). In this case, the preamble includes a detailed discussion about the differences between fee

**21**

calculation for anesthesiologists as opposed to physicians in other specialties. Due to these differences, the Commission employed a specific data calculation model designed *solely* for anesthesiologists. Because the Commission had a rational basis for its decision and because the Guideline does not impermissibly discriminate between individual anesthesiologists, we overrule Advocates= equal protection issue.

Finally, Advocates attacks certain provisions within the Dispute and Audit Rules as violating constitutional rights to due process and open courts. Because we have declared these provisions invalid as an improper delegation of authority to private insurance carriers, we need not address Advocates= final issue. *See* Tex. R. App. P. 47.1.

## CONCLUSION

For the reasons discussed above, we hold that the Guideline=s imposition of caps on medical fees complies with the Act. We overrule Advocates= challenges to the imposition of a one-year statute of limitations on medical dispute resolution as well as Advocates= constitutional challenges to the Guideline. However, we hold that the Commission=s delegation of sweeping auditing powers to private insurance carriers is invalid. Accordingly, we reverse the judgment of the trial court and render judgment that the portions of the Dispute and Audit Rules delegating audit power to private insurance carriers are void. On all other points, the judgment of the trial court is affirmed.

Mack Kidd, Justice

22

Before Justices Kidd, Yeakel and Patterson

Affirmed in Part; Reversed and Rendered in Part

Filed:   April 25, 2002

Publish