

# IN THE
# TENTH COURT OF APPEALS

---

## No. 10-15-00093-CV

## IN THE INTEREST OF S.M.R. AND A.L.R., CHILDREN

---

**From the 429th District Court
Collin County, Texas
Trial Court No. 429-53095-2010**

---

## MEMORANDUM  OPINION

---

In seven issues, appellant, Aura Lily Pleitez, challenges the trial court's order modifying the parent-child relationship. We affirm as modified.

## I.     BACKGROUND

Appellant and appellee, David D. Ritter, married in 1999, and divorced in January 2012.[1] The couple have two children, S.M.R. and A.L.R., who are the focus of this matter. Among the many provisions contained in the agreed divorce decree was the naming of the parties as joint managing conservators and the following geographic restriction:

---

[1] Both appellant and appellee are attorneys licensed in the State of Texas and are representing themselves on appeal.

IT IS ORDERED that the residences of the children shall be restricted to the geographic area being within a fifteen (15) mile radius of Christ the King School (situated at 4100 Colgate, Dallas, Texas 75225), and the parties shall not remove the children from this described geographic area for the purpose of changing their residences unless modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

In September 2012, appellee began dating a physician who practices family medicine and who has a four-year old daughter. Appellee and his girlfriend married on July 6, 2013. Less than a week later, on July 12, 2013, appellant filed a petition to modify the parent-child relationship. In her live pleading, her sixth amended petition and jury demand, appellant sought the exclusive right to designate the residence of the children and if given that right, that no geographic restriction be imposed. Appellant also requested modifications to the terms and conditions for access to and possession of the children, the exclusive right to make medical and educational decisions for the children, additional child support, and an award of attorney's fees and costs.

Appellee responded by filing a counter-petition to modify the parent-child relationship, requesting, among other things, an expansion of the fifteen-mile geographic restriction to the "geographic area within Collin, Dallas, Denton, or Tarrant counties, Texas; or, in the alternative, restricted to Collin County, Texas and contiguous counties thereto." Appellee also sought: (1) the exclusive right to designate the primary residence

of the children; (2) to modify the terms and conditions for access to and possession of the children; and (3) to modify child support. Both parties also sought temporary orders.[2]

The competing petitions for modification were tried in August 2014. The jury unanimously concluded that it was not in the children's best interest to modify the agreed divorce decree to name one of the parties as the conservator with the exclusive right to designate the primary residence of the children. Because of this finding, the jury did not answer subsequent questions in the charge pertaining to whether the children's residence should be geographically restricted.

On November 20, 2014, the trial court entered judgment in accordance with the verdict and, in relevant part, also granted appellee's requests to:

- expand the original fifteen-mile geographic restriction to include Collin and Dallas Counties;

- modify the "Right of First Refusal" provisions so that the right applied only to periods when appellant or appellee would be away from the children overnight; and

- modify appellee's child-support obligation to $261 per month.

The trial court denied all other requested relief. Thereafter, the trial court filed findings of fact and conclusions of law. This appeal followed.[3]

---

[2] In particular, appellee requested that the trial court make a temporary order to expand the geographic restriction to include the residence of his new wife, who lives in Plano, Texas, approximately 1.59 miles outside the original fifteen-mile geographic restriction.

[3] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Fifth District of Texas to this Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013) ("The supreme court may order

## II.  THE GEOGRAPHIC RESTRICTION

In her first issue, appellant complains that section 105.002(c) of the Texas Family Code prohibited the trial court from granting appellee's request to expand the geographic restriction because the issue had been submitted to the jury and the jury's verdict cannot be contravened.  *See* TEX. FAM. CODE ANN. § 105.002(c) (West 2014).

### A.  Applicable Law

Section 105.002(c) of the Texas Family Code provides the following:

(c) In a jury trial:

   (1) The party is entitled to a verdict by the jury and the court may not contravene a jury verdict on the issues of:

   (A) the appointment of a sole managing conservator;

   (B) the appointment of joint managing conservators;

   (C) the appointment of a possessory conservator;

   (D) the determination of which joint managing conservator has the exclusive right to designate the primary residence of the child;

   (E) the determination of whether to impose a restriction on the geographic area in which a joint managing conservator may designate the child's primary residence; and

   (F) if a restriction described by Paragraph (E) is imposed, the determination of the geographic area within which the joint managing conservator must designate the child's primary residence; and

---

cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

(2) the court may not submit to the jury questions on the issues of:

. . . .

(B) a specific term or condition of possession of or access to the child; or

(C) any right or duty of a conservator, other than the determination of which joint managing conservator has the exclusive right to designate the primary residence of the child under Subdivision (1)(D).

. . . .

*Id.*

## B. Discussion

Here, the parties agree that neither have the right to establish the "primary residence" for the children. Indeed, the charge stated that:

The parties' January 23, 2012 agreed decree of divorce does not name either party as the conservator who has the exclusive right to designate the primary residence of the children. For the decree to be modified to appoint one of the parties with that exclusive right, it must be proved that:

(1) the circumstances of a party have materially and substantially changed since the date of the divorce, January 24, 2012; and

(2) the appointment of one of the parties as the conservator who has the exclusive right to designate the primary residence of the children would be in the children's best interest.

The parties do not dispute the circumstances of one of them have materially and substantially changed since the date of the divorce. Therefore, in answering the questions below, your focus is on the children's best interest.

The charge also provided:

### QUESTION 1:

Is it in the children's best interest that the parties' agreed decree of divorce be modified to name one of the parties as the conservator who has the exclusive right to designate the primary residence of the children?

Answer "yes" or "no."

. . . .

If you answered "Yes" to Question 1, then answer Question 2. If you answered "No to Question 1, do NOT answer any further questions set forth; please sign the verdict form as instructed below and notify the bailiff that you have reached a verdict.

(Emphasis in original.) In response to this question, the jury answered in the negative. Therefore, because the jury did not conclude that it was in the best interest of the children for either party to have the exclusive right to designate the "primary residence" of the children, the jury did not answer any further questions, including those pertaining to the geographic restriction.

Based on our review of the record, we cannot say that the trial court contravened the jury's verdict with respect to the geographic restriction. In fact, the jury never reached the geographic-restriction questions because it answered the "primary residence" question in the negative. Pursuant to section 105.002(c), the jury was not authorized to address the geographic-restriction questions without first determining which conservator could designate the children's "primary residence." *See id.* § 105.002(c)(1)-(2). Moreover, appellant did not complain about the fact that the geographic-restriction questions were premised on the "primary residence" question during the charge

conference, nor did she tender a request in "substantially correct wording"; therefore, to the extent that she complains about these questions on appeal, we conclude that such complaints are waived. *See Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 602-03 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing TEX. R. CIV. P. 278 ("Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment."); *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002)). And finally, we note that the agreed divorce decree explicitly authorized the trial court to modify the geographic restriction. Accordingly, we overrule appellant's first issue.

### III. OTHER MODIFICATION REQUESTS GRANTED BY THE TRIAL COURT

In her second through seventh issues, appellant complains about various modifications to the agreed divorce decree made in favor of appellee. These modifications include the geographic restriction, language contained in several Findings of Fact, the possession schedule, medical and educational decision making, and the Right of First Refusal.

### A. Finding of Fact 79 and the Geographic Restriction

First, appellant argues that no evidence supports the trial court's decision to expand the geographic restriction to Collin and Dallas counties. Appellant specifically attacks Finding of Fact 79, which provides, as follows:

The Court finds that the geographic restriction in the Agreed Decree is not in the best interest of the children. The Court finds that Mother's opposition to changing the geographic restriction in the Agreed Decree is not in good faith and is for an improper motive. The Court further finds that changing the geographic restriction to Collin and Dallas counties will have little or no effect on the effect of visitation and communication with the parents to maintain a full and continuous relationship with the children.

In a legal-sufficiency review, we consider the evidence in the light most favorable to the judgment, indulging every reasonable inference in favor of the judgment. *See Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam); *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 286 (Tex. 1998). To determine whether legally-sufficient evidence supports a challenged finding of fact, we credit evidence that supports the finding if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The finder of fact is the sole judge of credibility of the witnesses and the weight to be assigned to their testimony. *See City of Keller*, 168 S.W.3d at 819. The finder of fact is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* As such, reviewing courts must assume that the finder of fact decided all credibility questions in favor of the findings, and chose what testimony to disregard in a way that was in favor of the findings, if a reasonable person could do so. *Id.* at 819-20.

In addition, it is within the finder of fact's province to resolve conflicts in the evidence. *Id.* at 820. Consequently, we must assume that, where reasonable, the finder

of fact resolved all conflicts in the evidence in a manner consistent with the findings. *Id.* Where conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* at 821. Thus, we must assume that the finder of fact made all inferences in favor of the findings if a reasonable person could do so. *Id.* As stated in *City of Keller*, the final test for legal sufficiency must always be "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. Anything more than a scintilla of evidence is legally sufficient to support the finding. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

In a factual-sufficiency challenge, an appellate court must consider and weigh all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* We may not pass upon the witnesses' credibility or substitute our judgment for that of the finder of fact, even if the evidence would support a different result. *2900 Smith, Ltd. v. Constellation New Energy, Inc.*, 301 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.). If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; we need not do so when affirming the judgment. *Id.*

On appeal, appellant contends that the record "reflects *no* witness testified the restriction should be expanded . . . or that the restriction in the divorce decree is not in the children's best interest." (Emphasis in original.) However, our review of the record shows that appellee's wife lives in Plano, Texas, which is in Collin County and is approximately 1.59 miles outside the fifteen-mile geographic restriction. Appellee testified that he wished to change the geographic restriction to Collin County or Collin and Dallas counties so that he may live with his wife and his children at his wife's residence. Because of the fifteen-mile geographic restriction, appellee has lived in apartments within fifteen miles of the children's school so that he can spend time with his children. In arguing that the expansion of the geographic restriction is in the best interest of the children, appellee stated the following:

> Because I think it's beneficial for the children for their father to live with his wife. It's beneficial for them to have another relationship to model after the one that Lily and I split apart. It's beneficial in that it's a bigger house. They'll have their own room. Right now we're living in an apartment. On the third bedroom, it's not that much room. . . . But there is a lot more room. It's a nice neighborhood, and I think it will be very beneficial for them.

Appellee further emphasized that the move to his wife's residence would be a positive improvement for the children and that he has not endangered or neglected the children.

The record also contains extensive questioning of appellee's wife regarding her parenting abilities if the geographic restriction were extended to include her residence. In particular, appellee's wife described her relationship with S.M.R. and A.L.R. as follows:

I was absolutely welcoming. I've done my best to try to be as kind and loving. I tell [S.M.R.] all the time I love you. The last time she and I met, I told her I missed her, and she actually told me she misses me. Which I think for—as difficult a relationship as she's making this out to be, I mean, she turned around and told me she misses me. That means a lot to me.

. . . .

I think [S.M.R.] is an amazing young lady. She's kind, she's accommodating. When I say something to her, she responds back nicely. She's nice with [appellee's wife's child], she's sweet to her. She's a polite young lady.

She's quiet and she's private and I respect her. She likes to sit in her room, which is fine.

. . . .

[A.L.R.]—when she wants to—can be very, very sweet and very, very loving. But most of the time at the house she's been very angry. She screams at my daughter, she slams the door in her face. For dinner she will sit with her back to me, even after I've asked her . . . turn around, let's talk.

I've had numerous conversations with [A.L.R.] asking her what can I do to make this better for you, and she's looked at me and said, I want nothing to do with you. And then there are times that I do get through to her. I took her to the park at one point, and we had a little bit of a conversation, but then she goes off to her mom's house, and when she comes back it's like everything has been wiped away. It's like she's right back to zero. I feel like I make a little progress, and then it's just completely undone. . . .

When asked whether she has contributed to A.L.R.'s anxiety or stress, appellee's wife

stated:

No. I've given them the best room in the house. I give them their space. I don't hover over them. When [A.L.R.] was sick, that one time that she was referring to, I held her head. That was the only time she's let me touch her. I held her head for 45 minutes.

Additionally, Crystal Cato, a licensed clinical social worker who prepared a social study in this case, noted that a geographic restriction including the "same county or contiguous counties" is in the children's best interest "so that both parents can be involved with the children.  Even if they don't have possession, they can attend school, and it's not a hardship and exchanges are not difficult to make for the children."

Given the above, we cannot say that the record is devoid of evidence regarding whether the geographic restriction should be expanded and whether such expansion is in the best interest of the children.  In fact, much of the aforementioned testimony touches on the factors enumerated in section 153.001 of the Texas Family Code, which provides that it is the public policy of this state to:  "(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child"; "(2) provide a safe, stable, and nonviolent environment for the child"; and "(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage."  TEX. FAM. CODE ANN. § 153.001(a) (West 2014).  Therefore, based on our review of the record, we conclude that the trial court's Finding of Fact 79 is supported by legally- and factually-sufficient evidence.[4]  *See Reyes*, 272 S.W.3d at 592; *City of Keller*, 168 S.W.3d at 827; *see also Cain*, 709 S.W.2d at 176.

---

[4] Interestingly, the record also reveals that, despite arguing on appeal that the trial court erred in expanding the fifteen-mile geographic restriction, appellant sought to eliminate the geographic restriction if she was granted the exclusive right to determine the "primary residence" of the children.

**B.  Findings of Fact 58 and 79**

Next, appellant challenges certain portions of Findings of Fact 58 and 79, particularly those portions stating that her request for no geographic restriction and her opposition to changing the geographic restriction if not given the exclusive right to designate the children's "primary residence" were not in good faith and were for an improper motive.

Findings of Fact 58 and 79 provide the following:

58.  The Court informed Mother that it typically applies a geographic restriction of Collin County and contiguous counties and believes such a geographic restriction to be within the best interest of the child.  Mother stated that she did not want to be bound by any geographic restriction. The Court finds that Mother's request that she have the exclusive right to designate the residence of the children without a geographic restriction was not made in good faith or made for an improper motive, and could have a detrimental effect on the children and their relationship with Father and Father's extended family.  As a result, Mother confirmed her request that the issues as to the exclusive right to designate the residence of the children and any geographic restriction be submitted to a jury.

. . . .

79. The Court finds that the geographic restriction in the Agreed Decree is not in the best interest of the children.  The Court finds that Mother's

---

Additionally, appellant also makes the argument that the expansion of the geographic restriction is not in the children's best interest because the children will no longer attend Christ the King School by August 2017.  However, "[w]hether there has been a material and substantial change of circumstances affecting the child is normally to be determined by an examination of the evidence of changed circumstances between the date of the order or judgment sought to be modified and the date of the filing of the motion to modify."  *In re Tyson*, No. 12-10-00243-CV, 2012 Tex. App. LEXIS 3659, at *7 (Tex. App.—Tyler May 9, 2012, no pet.) (mem. op.) (citing *Gibbs v. Greenwood*, 651 S.W.2d 377, 379 (Tex. App.—Austin 1983, no writ)).  Because the motions to modify were filed before August 2017, we find this argument to be irrelevant to our analysis of appellant's complaint pertaining to the geographic restriction.  *See Gibbs*, 651 S.W.2d at 379; *see also In re Tyson*, 2012 Tex. App. LEXIS 3659, at *7.

opposition to changing the geographic restriction in the Agreed Decree is not in good faith and is for an improper motive. The Court further finds that changing the geographic restriction to Collin and Dallas counties will have little or no effect on the effect of visitation and communication with the parents to maintain a full and continuous relationship with the children.

While an erroneous finding of fact on an ultimate fact issue is harmful error, an immaterial finding of fact is harmless and not grounds for reversal. *See Cooke County Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.—Fort Worth 2004, no pet.); *see also New Process Steel, L.P. v. Sharp Freight Sys.*, No. 01-04-00764-CV, 2006 Tex. App. LEXIS 2967, at *14 n.6 (Tex. App.—Houston [1st Dist.] Apr. 13, 2006, no pet.) (mem. op.). As noted above, the record contains sufficient evidence to support the trial court's decision to expand the geographic restriction. And because the expansion of the geographic restriction is supported by legally- and factually-sufficient evidence, the complained-of language is immaterial to the resolution of the ultimate issue. Accordingly, we conclude that the inclusion of the complained-of language is harmless and not grounds for reversal. *See Teel*, 129 S.W.3d at 731; *see also New Process Steel, L.P.*, 2006 Tex. App. LEXIS 2967, at *14 n 6.

### C. The Possession Schedule

Appellant also complains that the trial court abused its discretion in denying her request for a change in appellee's possession schedule. Appellant challenges numerous Findings of Fact corresponding with the possession schedule.

Pursuant to the agreed divorce decree, the parties have a "week-on, week-off" custody arrangement and share all duties and rights. In her live pleading, appellant requested that the "terms and conditions for access to or possession of the children be modified to provide that Respondent [appellant] shall have possession and access in accordance with a possession order that meets the needs and customary routines of the children and is in their best interest."

"With regard to issues of custody, control, possession, child support, and visitation, we give the trial court wide latitude and will reverse the trial court's order only if it appears from the record as a whole that the trial court abused its discretion." *Garza v. Garza*, 217 S.W.3d 538, 551 (Tex. App.—San Antonio 2006, no pet.) (citing *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied)). "Because the trial court is faced with the parties and their witnesses and observes their demeanor, it is in a better position to evaluate what will be in the best interest of the children." *Id.* at 551-52. A trial court abuses its discretion when it acts "without reference to any guiding rules or principles," or stated another way, when it acts in an arbitrary and unreasonable manner. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and its findings will not be disturbed if there is evidence of probative force to support them. *London v. London*, 192 S.W.3d 6, 14 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Section 156.101 of the Texas Family Code provides:

The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and:

(1) The circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:

(A) the date of the rendition of the order; or

(B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based . . . .

TEX. FAM. CODE ANN. § 156.101(a)(1) (West 2014). Here, the focus of appellant's complaints is on the best-interest factor.

Factors that may be considered in deciding what is in the best interest of a child include:

(1) the desires of the children, (2) the emotional and physical needs of the children now and in the future, (3) the emotional and physical danger to the children now and in the future, (4) the parental abilities of the individuals involved, (5) the programs available to those individuals to promote the best interest of the children, (6) the plans for the children by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent.

*In re A.C.S.*, 157 S.W.3d 9, 24 (Tex. App.—Waco 2004, no pet.) (citing *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *In re C.R.O.*, 96 S.W.3d 442, 451 (Tex. App.—Amarillo 2002, pet. denied); *Bates v. Tesar*, 81 S.W.3d 411, 434 (Tex. App.—El Paso 2002, no pet.)); *see, e.g.,* *In re T.R.L.*, No. 10-14-00290-CV, 2015 Tex. App. LEXIS 2178, at *17 (Tex. App.—Waco

Mar. 5, 2015, no pet.) (mem. op.) (noting that the *Holley* list is not exhaustive, but simply indicates factors that have been or could be pertinent) (citing *Holley*, 544 S.W.2d at 371-72).

In this complaint, appellant primarily attacks Findings of Fact 29, 30, 66, 70, 71, and 72, which state the following:

> 29. Mother also told the children to act assertively against [T.A.], [appellee's wife's] daughter who was five years old at the time, despite requests by Father to Mother that she instruct the children to be loving toward [appellee's wife's] daughter.
>
> 30. Mother also made negative statements against Father, [appellee's wife], and [appellee's wife's] daughter. *Social Study, page 26.* The children's psychologist, Rachel McGuire, believed Mother had been considered negligent in discussing the custody case with the children. *Id. page 32.* Mother was willing to excuse certain behaviors of the children. *Id. page 38.*
>
> . . . .
>
> 66. Up through the date of this trial, and from the time of the temporary orders granted in July 2010, both parties generally exercised possession during their periods of possession. Both parties routinely took the children to school and summer activities during each party's weeks of possession, picked the children up from school and summer activities and took them to after school events such as piano, speech therapy, counseling, soccer practice, basketball practice, volunteer events, volleyball practice, etc. Both parties provided food, shelter and their needs at each party's residence. Father took the children to his parents' house near Houston so they could spend time with their extended family members. The children are doing well in school. The parties testified the children are making grades of A's and B's. The oldest child is a member of the National Junior Honor Society. The children have several friends and social peers and are involved in extracurricular activities.
>
> . . . .

70. The parties continued to act in accordance with the agreed parenting plan in the Agreed Divorce since the date of the Agreed Decree and through the date of trial. The Court finds that such continued action in accordance with the agreed parenting plan in the Agreed Decree is in the best interest of the children.

71. The Court finds that the proposed changes to possession and conservatorship requested by Mother are not in the best interest of the children.

72. After reviewing the factors set forth in Texas Family Code section 153.256, the Court finds that the agreement of the parties in the Agreed Decree, subject to the modifications set forth in the Order, is in the best interest of the children and the public policy of Texas pursuant to the Texas Family Code section 153.001 in that these orders proves for the children to "have frequent and continuing contact with parents who have shown ability to act in the best interest of the children," "provide a safe, stable, and nonviolent environment for the child[ren]" and "encourage [the] parents to share in the rights and duties of raising their child[ren]."

Based on our review, the record evidence sufficiently supports the aforementioned Findings of Fact. Specifically, appellee's wife testified that the 50/50 possession schedule is "working pretty well" and that under the schedule "both of us have a good period of time with the children." Appellee also testified that he wishes for the 50/50 possession schedule to remain. He also noted:

I'd like to be able to work with Ms. Pleitez, Lily Pleitez, my ex-wife, on issues. And we've got a parenting facilitator to help with that.

I mean, I'd like to one day not to need a parenting facilitator because it's a costly and time-consuming endeavor, but it has been necessary. But I would like to be able to, um, gradually over time, over—after the jury makes a decision—to be able to work with my daughters gradually, go in— into overtime, re-establish the family relationship that we have with my wife. So that we can all move in together and—

Both appellee and his wife expressed that they would participate in counseling with the children once the litigation is over and would gradually transition the children. Appellee further testified that he would maintain an apartment until A.L.R. graduated from high school if that is what it takes to blend the family.

Furthermore, Cato recommended that the 50/50 possession schedule remain with the condition that appellee, appellee's wife, and all of the children participate in therapy with Licensed Professional Counselor Rachel McGuire to work on blending the family. Later, McGuire testified that she would leave the possession schedule as it is, so long as additional counseling is obtained to address family blending. However, both Cato and McGuire agreed that the possession schedule should be modified if appellee's family does not actively participate in therapy. The evidence also details the efforts that appellant and appellee's family have made in caring for the children.

To the extent that the evidence conflicts, we reiterate that the factfinder was the sole judge of credibility of the witnesses and the weight to be assigned their testimony. *City of Keller*, 168 S.W.3d at 819. And as such, we assume that the factfinder decided all credibility questions in favor of the findings, if a reasonable person could do so. *Id.* at 819-20. And contrary to appellant's assertion that the evidence in support of the 50/50 possession schedule is not supported by sufficient evidence with respect to the children's need for stability, we believe that the evidence detailed above does touch on future stability for the children. Moreover, the *Holley* list is not exhaustive, and the absence of

evidence as to a particular *Holley* factor is not determinative. *See Holley*, 544 S.W.2d at 371-72; *see also In re T.R.L.*, 2015 Tex. App. LEXIS 2178, at *17; *Smith v. Dep't of Family & Protective Servs.*, No. 01-07-00648-CV, 2008 Tex. App. LEXIS 4568, at *22 (Tex. App.—Houston [1st Dist.] June 19, 2008, no pet.) (mem. op.) ("We note absence of evidence regarding some of the *Holley* factors is not determinative."). We therefore cannot say that the trial court abused its discretion in denying appellant's request to modify the possession schedule and, instead, ordering that the agreed-upon possession schedule remain in effect. *See Garza*, 217 S.W.3d at 551-52; *In re J.R.D.*, 169 S.W.3d at 743.

### D. Medical and Educational Decision Making

Appellant further contends that the trial court abused its discretion in denying her request to be awarded the exclusive right to make medical and educational decisions for the children. In this complaint, appellant primarily challenges Finding of Fact 67, which provides: "67. The parties agreed to medical treatments for the children. The parties use Shannon Bradshaw to work out conflicts." When asked if it would be in the children's best interest if she had the exclusive right to make medical and educational decisions for the children, appellant stated:

> I think in the best interest of the girls, if we could reach an agreement, it would be best for both of us to exercise that right and to reach joint decisions. What I've seen in the past 2 years is we can't. He's prevented or disagreed on these major decisions that are recommended by the treating physician in [S.M.R.'s] case and the treating therapist in [A.L.R.'s] case.

Indeed, the record reveals numerous disagreements between appellant and appellee regarding medical and educational decisions for the children. For example, with respect to speech therapy, Cato noted that appellee wanted to take advantage of free speech therapy offered by the Highland Park Independent School District. Appellee testified that the free speech therapy at the school was recommended, but that appellant did not agree to obtaining therapy through this resource. Appellee further noted that he takes A.L.R. to speech therapy twice a week and that the sessions cost $17 out of pocket after insurance. Appellee later testified that he and appellant disagreed about eye surgeries for S.M.R. Appellee wanted to get a second opinion about alternatives to surgery. In his brief, appellee characterizes the situation as such: "The educational disagreements were about economics. Disagreements are routine among divorced couples. They don't agree all the time."

Appellant disagreed with appellee's testimony and testified about the difficulties she has had with appellee regarding medical and educational decisions. Appellant alleged that appellee caused a delay of one year for S.M.R. to have eye surgery and an almost two-year delay for A.L.R. to receive twice-a-week speech therapy. Nevertheless, it appears that the eye surgery for S.M.R. transpired and that A.L.R. is attending twice-a-week speech therapy. Moreover, the parties live in the same county, have a facilitator, and have seemingly worked out most disagreements through the facilitator. Also, as indicated previously, the factfinder was the sole judge of credibility of the witnesses and

the weight to be assigned their testimony. *City of Keller*, 168 S.W.3d at 819. And as such, we assume that the factfinder decided all credibility questions in favor of the findings, if a reasonable person could do so. *Id.* at 819-20. Therefore, based on our review of the record, we cannot say that the trial court abused its discretion in denying appellant's request to be awarded the exclusive right to make medical and educational decisions for the children. *See Garza*, 217 S.W.3d at 551-52; *In re J.R.D.*, 169 S.W.3d at 743; *see also In re C.C.J.*, 244 S.W.3d 911, 917 (Tex. App.—Dallas 2008, no pet.) (noting that the trial court retains broad discretion in crafting the rights and duties of each conservator so as to effectuate the best interest of the child).

### E. The Right of First Refusal

Appellant also argues that the trial court erred in modifying the right of first refusal so that it applies only to periods when appellant and appellee would be away from the children overnight. Appellant primarily challenges Finding of Fact 68, which states:

> 68. Despite the parties' agreement on some issues, both parents have admitted that they have disagreements and issues particularly when meeting each other and exchanging the children, and have had to engage the parental facilitator to work out issues. The Court finds that provisions in the Agreed Decree regarding the right of first refusal based on a six hour time frame, and after-school are too restrictive and not in the best interest of the children.

Appellee testified that the right of first refusal is untenable because the children are always eating or doing homework when he shows up, thus creating a stressful

situation. Appellee also complained that the prior six-hour time frame was too short and did not allow him to leave the children with his wife. Appellant countered that the children do not readily go with appellee and that the modified right of first refusal does not address the children's lack of relationship with appellee's wife.

It is apparent that the record contains credible evidence both in support of and against the modification. Once again, we emphasize that the factfinder was the sole judge of credibility of the witnesses and the weight to be assigned their testimony. *City of Keller*, 168 S.W.3d at 819. And as such, we assume that the factfinder decided all credibility questions in favor of the findings, if a reasonable person could do so. *Id.* at 819-20. Therefore, based on our review of the record, we cannot say that the trial court abused its discretion in modifying the right of first refusal. *See Garza*, 217 S.W.3d at 551-52; *In re J.R.D.*, 169 S.W.3d at 743; *see also In re C.C.J.*, 244 S.W.3d at 917.

**F. Findings of Fact 10, 13, and 41**

Finally, appellant argues that the trial court abused its discretion in entering Findings of Fact 10, 13, and 41 because there is not sufficient evidence to support these findings.

Findings of Fact 10, 13, and 41 state the following:

10. In the divorce case, and as reflected by the docket sheet upon which the Court takes judicial notice, on July 30, 2010, the 366th Judicial District Court, after hearing the merits of both parties' requests for temporary orders, granted a 50/50/2-2-5-5 possession schedule for the parties. The Court also ordered on a temporary basis that Father should have the exclusive right to

establish the children's principal residence in Collin and contiguous counties. The Court ordered the appointment of a parenting facilitator. . . .

13. In the divorce case, and in the Court's file upon which the Court takes judicial notice, a social study was prepared by Anne V. Ellis. That social study provides that it did "not appear necessary to appoint one parent as having the exclusive right to establish residence as long as there is a residence restriction," but if such a designation is made, this evaluator recommends that [Father] have the exclusive right to establish the children's primary residence. . . ."

. . . .

41. In the Order of September 17, 2013, the Court ordered that "the residences of the children the subjects of this suit shall be restricted to the geographic area existing within a 360 degree radius, the beginning point of which radius distance shall be the children's present school, Christ the King located at 4100 Colgate Ave., Dallas, Texas 75225, and the ending point of said radius distance shall be [Father]'s new residence address of 8416 Quinton Point, Plano, Texas 75025."

Texas Rule of Civil Procedure 296 provides, in pertinent part, that: "In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." TEX. R. CIV. P. 296. If a party deems the court's findings and conclusions deficient in some respect, she may request "specified additional or amended findings or conclusions." *Id.* at R. 298.

A court need not make findings of fact on undisputed matters. *See SMI/USA, Inc. v. Profile Techs., Inc.*, 38 S.W.3d 205, 209 (Tex. App.—Waco 2001, no pet.); *Int'l Ins. Agency, Inc. v. Railroad Comm'n*, 893 S.W.2d 204, 211 (Tex. App.—Austin 1995, writ denied). Rather, a court must make findings of fact and conclusions of law "on each material issue raised by the pleadings and evidence." *Roberts v. Roberts*, 999 S.W.2d 424, 424 (Tex.

App.—El Paso 1999, no pet.); *see Limbaugh v. Limbaugh*, 71 S.W.3d 1, 6 (Tex. App.—Waco 2002, no pet.).

Though appellant objected to these findings and proposed alternative findings, the majority of the complained-of Findings of Fact are mere recitations of that which is already contained in the record. *See Teel*, 129 S.W.3d at 731 ("[A]n immaterial finding of fact is harmless and not grounds for reversal."). Finding of Fact 10 reflects the statements made on the docketing sheet for the July 30, 2010 temporary-orders hearing, which mostly corresponds with the trial court's order from the hearing. However, appellant correctly states that neither the trial court's oral pronouncement nor the written temporary orders from the July 30, 2010 hearing granted appellee "the exclusive right to establish the children's principal residence in Collin and contiguous counties." Because a docket entry "cannot be used to contradict or prevail over a final judicial order," *N-S-W Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex. 1977), we delete the portion of Finding of Fact 10 stating that appellee was granted "the exclusive right to establish the children's principal residence in Collin and contiguous counties" at the July 30, 2010 temporary-orders hearing.

Finding of Fact 13 corresponds with the docket entry made on March 30, 2011 entitled, "Child Custody Evaluation Report." And finally, Finding of Fact 41 recounts the substance of the trial court's December 18, 2013 temporary order. The parties agree that Finding of Fact 41 erroneously refers to the date of the order as being September 17,

2013, which was the date of the hearing. Accordingly, we modify Finding of Fact 41 to reference the trial court's December 18, 2013 temporary order of modification, not the September 17, 2013 hearing date. We overrule all of appellant's remaining issues.

## IV.  CONCLUSION

As noted above, we modify Finding of Fact 10 to delete the statement that appellee was granted "the exclusive right to establish the children's principal residence in Collin and contiguous counties." Additionally, we modify Finding of Fact 41 to reference the trial court's December 18, 2013 temporary order of modification, not the September 17, 2013 hearing date. We affirm the judgment of the trial court in all other respects.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed as modified
Opinion delivered and filed December 14, 2016
[CV06]

